UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APRIL INGRAM-FLEMING, on behalf of
herself and all similarly situated individuals,

        Plaintiff,

                v.

LOWE'S HOME CENTERS, LLC, d/b/a
Lowe's,

        Defendant.
_____/

Case No. 8:14-cv-2569-SDM-MAP

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
### FIRST AMENDED CLASS ACTION COMPLAINT

      Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 3.01, Defendant Lowe's Home Centers, LLC ("Lowe's") respectfully moves this Court to dismiss Plaintiff April Ingram-Fleming's First Amended Class Action Complaint and Demand for Jury Trial ("Complaint") in its entirety because it fails to state a claim upon which relief may be granted. In the alternative, Lowe's respectfully moves this Court to dismiss Ingram-Fleming's Third Claim for Relief because it fails to state a claim upon which relief may be granted. The grounds for this motion are set forth fully in the accompanying memorandum of law.

      Lowe's will file a Motion To Transfer Or, In The Alternative, To Stay, pursuant to the first-to-file rule or 28 U.S.C. § 1404(a). Lowe's files this separate Motion to Dismiss to preserve its arguments that Ingram-Fleming's Complaint fails to state a claim.

## MEMORANDUM OF LAW

## INTRODUCTION

Lowe's obtained a background check report concerning Ingram-Fleming when she applied for employment with the company. Ingram-Fleming has now sued Lowe's, asserting three claims for relief under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*.: (i) Lowe's fired her, based in whole or in part, on the results of her background check, without first providing her with a copy of the report ("First Claim for Relief"); (ii) Lowe's procured her background check report without first providing her with a disclosure meeting FCRA requirements ("Second Claim For Relief"); and (iii) Lowe's procured her report without her lawful authorization to do so ("Third Claim For Relief").

At the heart of Ingram-Fleming's Complaint are her allegations that the pre-hire background check Lowe's performed on her, and on others, constitutes a "consumer report" as defined by the FCRA. Lowe's respectfully submits that the Court should dismiss this action in its entirety because, based on the allegations on the face of Ingram-Fleming's Complaint, the pre-hire background reports Lowe's obtains are not "consumer reports" as defined by the FCRA. Specifically, the FCRA exempts from the definition of a "consumer report" certain background reports obtained consistent with a preexisting written policy and those obtained in connection with an investigation into misconduct. As demonstrated by Ingram-Fleming's allegations, Lowe's collected the background check result in connection with an investigation into whether Ingram-Fleming falsified her application and whether employing Ingram-Fleming would comply with Lowe's preexisting written policy that

requires successful completion of the background check process prior to beginning work. Therefore, the FCRA does not apply and this matter should be dismissed in its entirety.

In the alternative, assuming for the sake of argument that the FCRA does apply (which it does not), Ingram-Fleming's authorization claim (her Third Claim For Relief) must be dismissed because she fails to allege any facts in support of the claim.

## STATEMENT OF FACTS[1]

Lowe's is a home improvement retailer headquartered in Mooresville, North Carolina. (*See* Pl.'s Am. Compl. ¶¶ 1, 16.) Pursuant to its policy, Lowe's Companies, Inc. and its related companies, including Lowe's, routinely conduct background checks on prospective employees and rely on that information in making employment decisions. (*See id.* ¶¶ 2, 19, 50, and Darin Barton Declaration, Dec. 4, 2014, Ex. A attached thereto; *see also* Ex. A-1, attached hereto to Barton Decl.) Lowe's Employment Policy articulates the company's policy: "A new hire cannot begin work until an approved background has been received." (*See* Ex. A-1 at 2.)

In July 2014, Ingram-Fleming applied for a cashier position at a Lowe's store. (*See* Pl.'s Am. Compl. ¶ 32.) Lowe's hired Ingram-Fleming, contingent on her successful completion of Lowe's background check process. (*See id.* ¶ 33.) Lowe's then obtained a background report on Ingram-Fleming from First Advantage Background Services Corp. (*See id.* ¶ 34; *see also* Ex. A-2, attached hereto to Barton Decl.)[2] Ingram-Fleming alleges that the report is a "consumer report" under the FCRA. (*See* Pl.'s Am. Compl. ¶ 21.)

---

[1] Given the standard of review applicable to the motion, Lowe's sets forth the facts as alleged in Ingram-Fleming's complaint. Lowe's does not admit that any such alleged facts are true.
[2] Ingram-Fleming's report is attached hereto as Exhibit A-2.

3

Thereafter, Lowe's informed Ingram-Fleming that, due to information in her report, she was fired. (*See id.* ¶ 34.)

Ingram-Fleming did not receive advance notification that an adverse action may be taken against her. (*See id.* ¶ 35.) Ingram-Fleming did not receive a copy of her background report until after Lowe's fired her. (*See id.* ¶ 36.)

Pursuant to its standard screening process and policies, Lowe's took similar action with respect to classes of other individuals. (*See id.* ¶¶ 19, 39, 40, 50.)

On October 9, 2014, Ingram-Fleming filed a Complaint against Lowe's alleging three claims for relief under the FCRA. (*See generally* Pl.'s Compl.) On November 19, 2014, Ingram-Fleming amended her complaint, but asserted the same three claims for relief. (*See generally* Pl.'s Am. Compl.) Ingram-Fleming alleges that Lowe's violated the FCRA, as to her and putative class members, by: (First Claim For Relief) failing to provide them with a copy of their consumer reports before taking an adverse action against them, *id.* ¶ 59; (Second Claim For Relief) procuring a consumer report without first providing them with FCRA-compliant disclosures, *id.* ¶ 65; and (Third Claim For Relief) procuring a consumer report without proper authorization, *id.* ¶ 70.

Ingram-Fleming purports to bring her claims on her own behalf and on behalf of two classes:

> Adverse Action Class: All Lowe's employees and job applicants in the U.S. against whom adverse employment action was taken based on information contained in a consumer report obtained by "*First Advantage Background Services Corp.*" within five years of the filing of this complaint through the date of final judgment in this action who were not provided the proper pre-adverse notice as required by the FCRA.

4

>    Improper Disclosure and Authorization Class: All Lowe's employees and job applicants in the U.S. who were the subject of a consumer report that was procured by Lowe's within five years of the filing of this complaint through the date of final judgment in this action as required by the FCRA.[3]

(Pl.'s Am. Compl. ¶¶ 12-13, 47-48.)

## ARGUMENTS AND AUTHORITIES

**A. Legal standard for a Federal Rule of Civil Procedure 12(b)(6) motion.**

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1, (2002); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). While "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

Under Rule 12(b)(6), "[a] document not attached to the Complaint . . . may be considered by the Court without converting the motion to dismiss into a motion for summary judgment if that document is (1) central to the plaintiff's claims and (2) undisputed, meaning that the authenticity of the document is not challenged." *Hodge v. Orlando Util. Comm'n*,

---

[3] Ingram-Fleming refers to this class as the "Background Check Class" in other Complaint allegations. (*See* Pl.'s Am. Compl. ¶¶ 64-68, 70-73.)

No. 6:09-cv-1059-Orl-19DAB, 2009 WL 5067758, *3 & n. 2 (M.D. Fla. Dec. 15, 2009) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)); *see also Grimm v. U.S. Bank Nat'l Ass'n*, No. 5:14-cv-51-Oc-30PRL, 2014 WL 6685347, *2 & n. 7 (M.D. Fla. Nov. 25, 2014) (citing *Day* and considering mortgage note without converting motion to dismiss into motion for summary judgment because it was central to the complaint).

**B. This Court may consider Ingram-Fleming's report and Lowe's relevant policy.**

Ingram-Fleming's claims arise from Lowe's pre-hire background check process through which it obtained a background report on her. In her Complaint, Ingram-Fleming repeatedly references Lowe's "routine" "standard screening process" and "standard policies and practices" pursuant to which her report, and those of the purported class members, was procured. (*See, e.g.,* Pl.'s Am. Compl. ¶¶ 2, 19, 50, 55.) In fact, Lowe's policy governing its background check process forms the basis for her class claims. As the policy is central to Ingram-Fleming's claims, Lowe's has attached hereto as Exhibit A-1 an authenticated copy of its Employment Policy. Because this policy is central to Ingram-Fleming's claims on behalf of herself and the proposed classes, the Court may consider this policy on Lowe's motion to dismiss. *See Hodge*, 2009 WL 5067758 at *3, n. 2, *4 (considering Charges of Discrimination and Right to Sue letter without converting motion to dismiss to motion for summary judgment because they were central to plaintiff's claim and their authenticity was undisputed).

Ingram-Fleming asserts that Lowe's fired her based on information contained in her report. (*See* Pl.'s Am. Compl. ¶¶ 29, 34.) That Lowe's allegedly based its decision to fire Ingram-Fleming on information in her report is what triggered Lowe's obligation to provide

6

her with a copy of the report.  (*See id.* ¶ 45.)  Because Lowe's allegedly did not provide Ingram-Fleming with a copy of her report before it made the decision to fire her based on its contents, Lowe's violated the FCRA.  (*See id.* ¶¶ 38, 59.)  Thus, Ingram-Fleming's report is central to her claims and the Court may consider its contents in deciding Lowe's motion to dismiss.  *See Hodge*, 2009 WL 5067758 at *3, n. 2, *4.  An authenticated copy of Ingram-Fleming's report is attached as Exhibit A-2.

### C. Ingram-Fleming fails to state any claim upon which relief may be granted because the report on which Ingram-Fleming bases her claims is not a "consumer report" and, therefore, is not subject to the FCRA.

Ingram-Fleming's claims against Lowe's should be dismissed because the background report requested regarding Ingram-Fleming falls within an express exclusion from the FCRA's definition of "consumer report."  All of the counts against Lowe's require a finding that the report regarding Ingram-Fleming is a "consumer report" under the FCRA.[4]  Because the report at issue is not a "consumer report," the FCRA is inapplicable and Ingram-Fleming's claims must be dismissed.

The definition of a "consumer report" includes a report "by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," when such a report is "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes."  *Id.* § 1681a(d)(1)(B).  Certain reports are excluded from this definition.  *See id.* § 1681a(d)(2).

---

[4] *See, e.g.*, 15 U.S.C. § 1681b(b)(2) ("[A] person may not **procure a consumer report** . . . unless— [disclosure provided and authorization obtained].") (emphasis added); *id.* § 1681b(b)(3) ("**[I]n using a consumer report** for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—(i) a copy of the report; and (ii) a description [of rights].") (emphasis added).

7

For instance, under § 1681a(y)(1)(B), a communication which "but for subsection (d)(2)(D) . . . would be a consumer report," is excluded from being a consumer report if:

> (B) the communication is made to an employer in connection with an investigation of —
>   (i) suspected misconduct relating to employment; or
>   (ii) compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;
> (C) the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and
> (D) the communication is not provided to any person except —
>   (i) to the employer or an agent of the employer; . . . .

*Id.* § 1681a(y)(1). Lowe's procurement of a background report on Ingram-Fleming satisfies § 1681a(y)(1)(B)(ii), (C), and (D).

### 1. Lowe's procured a background report on Ingram-Fleming to investigate compliance with Lowe's preexisting written policy.

Lowe's procured a background report on Ingram-Fleming to investigate whether hiring her complied with Lowe's policy. At the time of Ingram-Fleming's application, Lowe's preexisting written policy provided that "a new hire cannot begin work until an approved background has been received." (*See* Ex. A-1 at 2.) In addition, because Lowe's policy mandates that no new hire may begin work until Lowe's has received an approved background, *see* Exhibit A-1 at 2, Lowe's procured Ingram-Fleming's report "in connection with an investigation of . . . compliance with . . . any preexisting written policies of the employer" and, consequently, it is not a "consumer report" under the FCRA. *See* 15 U.S.C. § 1681a(y)(1)(B)(ii).

To the extent Ingram-Fleming argues that obtaining a background report on her was not an "investigation," that argument fails. Ingram-Fleming's background report did not


Case 5:13-cv-00079-RLV-DSC   Document 65   Filed 12/08/14   Page 8 of 15

magically land in Lowe's possession.  Were it that easy, Lowe's would not have contracted with a consumer reporting agency and paid it to perform the investigative services resulting in Ingram-Fleming's report.  (*See* Pl.'s Am. Compl. ¶¶ 20, 34.)  Ingram-Fleming's report shows the sources that were reviewed in preparing the report.  (*See* Ex. A-2.)  Self-evidently, gathering that information was an investigation.  *See, e.g., Millard v. Miller*, No. 05-C-103-S, 2005 WL 1899475 (W.D. Wis. Aug. 9, 2005) (holding that obtaining reports bearing on the dates an employee was shopping constituted an investigation, and the § 1681a(y) exclusion, which in the case is referred to as § 1681a(x),[5] applied).

### 2. Lowe's did not obtain Ingram-Fleming's report for the purpose of investigating her credit worthiness, standing or capacity.

Ingram-Fleming does not allege that Lowe's obtained the report for the purpose of investigating her credit worthiness, credit standing, or credit capacity.  Rather, she claims Lowe's obtained the report for employment purposes.  (*See* Pl.'s Am. Compl. ¶¶ 6, 40.)  The face of Ingram-Fleming's report confirms that Lowe's made no inquiry into her credit worthiness, credit standing, or credit capacity.  (*See* Ex. A-2.)

### 3. Lowe's did not disclose the report to anyone other than Ingram-Fleming.

Ingram-Fleming does not allege that anyone other than Lowe's and she received a copy of the report.  (*See, e.g.,* Pl.'s Am. Compl. ¶ 36.)  To the extent Ingram-Fleming argues the exclusion's requirements are not met because Lowe's provided her with a copy of the report, rather than a summary thereof, her argument fails.  The restriction on disclosure of the excluded communication—here, Ingram-Fleming's report—is designed to protect the report

---

[5] *Millard* was decided before the Consumer Financial Protection Act of 2010 re-designated 15 U.S.C. § 1681a(x), § 1681a(y).  *See* 15 U.S.C. § 1681a(d)(2)(D), n. 1.

9

subject's privacy, one of the FCRA's purposes.  *See* 15 U.S.C. § 1681(a)(4) (articulating the need to protect consumer's right to privacy).  Had the communication qualified as a "consumer report" this protection would have been afforded through, for example, section 1681b(a) (articulating the circumstances under which a consumer reporting agency may furnish a consumer report), section 1681b(f) (prohibiting using or obtaining a consumer report unless it is for an authorized purpose and the purpose is certified by the prospective user) and section 1681b(b)(1) (articulating requirements that must be met for a consumer reporting agency to provide a consumer report to an employer for employment purposes).  Including a disclosure restriction affords privacy protection even where the communication is not a "consumer report."  Disclosing the communication to the consumer does not contravene this protection; indeed, the exclusion requires information about the communication be shared with the consumer if adverse action is taken based on the information in the communication.  *See* 15 U.S.C. § 1681a(y)(2).

The exclusion's subsequent disclosure requirement ensures that the consumer learns of the nature and substance of the communication without requiring that the employer disclose all the details of the investigation.  *See id.* ("the employer shall disclose to the consumer a summary containing the nature and substance of the communication upon which the adverse action is based, except that the sources of information . . . need not be disclosed").  This limitation on the employer's subsequent disclosure obligation is a right of the employer—if it chooses—to protect sources of information, but does not require that the employer withhold that information, thereby leaving it free to disclose the report rather than

10

just a summary to the consumer. Thus, the fact that Lowe's provided Ingram-Fleming with a copy of her report does not defeat the exclusion.

### 4. The exclusion in 15 U.S.C. § 1681a(y) applies in this case and, as a result, the FCRA does not apply and Ingram-Fleming's Complaint must be dismissed.

The scope of § 1681a(y) was thoroughly examined in *Martin v. First Advantage Background Services Corporation*, 877 F. Supp. 2d 754, 758-60 (D. Minn. 2012).[6] As the United States District Court for the District of Minnesota stated, "[t]he Court must conclude that a report received and used in connection with an investigation into the employer's compliance with laws, regulations, or preexisting written internal policies is sufficient to trigger the exemption." *Martin v. First Advantage Background Servs. Corp.*, 877 F. Supp. 2d 754, 759 (D. Minn. 2012); *see also Martin*, No. 0:11-cv-3357, slip op. at 14 ("FCRA does not apply here because the Report is exempt from FCRA pursuant to 15 U.S.C. § 1681a(y).").

Accordingly, § 1681a(y) applies to the purported "consumer report" at issue here. Lowe's conducted itself in a manner consistent with its obligations under § 1681a(y). Ingram-Fleming's Complaint should be dismissed in its entirety.

---

[6] In *Martin*, the plaintiff brought five counts under the FCRA, including the same failure to provide pre-adverse action disclosure that forms the basis for Count II and III of Plaintiff's Complaint here. *See Martin*, 877 F. Supp. 2d at 757. The plaintiff was an employee of defendant Wells Fargo when he accepted a new position within the bank. Defendant Wells Fargo requested for defendant First Advantage Background Services Corp. to complete a criminal background report on the plaintiff. *Id.* at 756. The report found a criminal conviction, so Wells Fargo terminated the plaintiff. *Id.* The plaintiff had evidence proving that he was never convicted and filed suit for numerous FCRA violations. *Id.* Defendant Wells Fargo relied on § 1681a(y) to argue that its decision to obtain a criminal background check was "made in connection with an investigation to ensure compliance with FIRREA, the SAFE Act, and Wells Fargo's own written policies." *Id.* at 760. The court held that it "must conclude that a report received and used in connection with an investigation into the employer's compliance with laws, regulations, or preexisting written internal policies is sufficient to trigger the exemption." *Id.* at 759. The court ultimately granted summary judgment for the defendant on the § 1681a(y) issue. *Martin v. First Advantage Background Servs. Corp.*, No. 0:11-cv-3357, slip op. at 14 (D. Minn. Mar. 26, 2014).

11

**D. In the event the Court denies Lowe's motion to dismiss the Complaint in its entirety, alternatively, Ingram-Fleming's Third Claim for Relief fails to state a claim for relief and must be dismissed.**

Ingram-Fleming's Third Claim for Relief, in which she claims Lowe's failed to obtain from her a lawful authorization to procure a consumer report, fails to state a claim upon which relief may be granted. Ingram-Fleming alleges that the authorization is unlawful simply because it is in the same document as the allegedly unlawful disclosure. This position is legally untenable.

The FCRA requires that, prior to obtaining a consumer report on a consumer for employment purposes, an employer must (i) provide to the consumer a "clear and conspicuous" disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes, *see* 15 U.S.C. § 1681b(b)(2)(A)(i), and (ii) obtain written authorization from the consumer to obtain a consumer report, *see* 15 U.S.C. § 1681b(b)(2)(A)(ii). These are two separate requirements.

The authorization may be, but is not required to be, contained in the same document as the disclosure. *Id.* In short, the only statutory requirement with respect to the authorization is that one be obtained from the subject of the report in writing before procuring a report. *See id.*

Ingram-Fleming does not allege that Lowe's failed to obtain written authorization from her or putative class members before obtaining consumer reports. In fact, Ingram-Fleming's Complaint is void of any allegations regarding the legal sufficiency of the authorization she signed. Rather, Ingram-Fleming alleges merely that the authorization is unlawful because it is in the same document as the disclosure. (*See* Pl.'s Am. Compl. ¶ 7

12

("Finally, Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports on Plaintiff and other putative class members without proper authorization, due to the fact that its disclosure forms fail to comply with the requirements of the FCRA.")). Including the authorization in the disclosure does not violate the FCRA. Unlike the disclosure, the FCRA does not require that the authorization be in a stand-alone document, and the FCRA specifically allows for the disclosure to include the authorization. *See* 15 U.S.C. § 1681b(b)(2)(A). In short, the FCRA simply requires that written authorization be obtained in advance of procuring a consumer report. *Id.* Lowe's did so, and Ingram-Fleming does not allege otherwise. Thus, Ingram-Fleming's Third Claim for Relief fails to state a claim upon which relief may be granted and must be dismissed.

## CONCLUSION

For the reasons stated above, Lowe's respectfully requests that this Court dismiss Ingram-Fleming's complaint in its entirety. If the Court declines to do so, Lowe's respectfully requests in the alternative that the Court dismiss Ingram-Fleming's Third Claim for Relief.

Dated: December 8, 2014

                Respectfully submitted,

                s/Reed L. Russell
                Reed L. Russell – Trial Counsel
                Florida Bar No.: 0184860
                reed.russell@phelps.com
                Phelps Dunbar LLP
                100 South Ashley Drive, Suite 1900
                Tampa, Florida 33602-5311
                813-472-7550
                813-472-7570 (FAX)

-and-

Kevin James White *(admitted pro hac* vice)
  kwhite@hunton.com
Robert T. Quackenboss *(admitted pro have vice)*
  rquackenboss@hunton.com
Hunton & Williams LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
202-955-1886
202-778-2201 (FAX)

Anna Lazarus
  Florida Bar No. 41337
  alazarus@hunton.com
Hunton & Williams LLP
1111 Brickell Ave., Suite 2500
Miami, Florida 33131
305-810-2500
305.810.2460 (FAX)

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 8th day of December, 2014, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Luis A. Cabassa, Esq.
Brandon J. Hill, Esq.
WENZEL FENTON CABASSA, P.A.
1110 North Florida Avenue, Suite 300
Tampa, Florida 33602
813.224.0431 – TELEPHONE
813.229.8712 – FAX
lcabassa@wfclaw.com – E-MAIL

                                            By: s/ Reed L. Russell
                                                  Attorney

15

Case 5:13-cv-00079-RLV-DSC   Document 65   Filed 12/08/14   Page 15 of 15