# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

| | | |
|---|---|---|
| JASON DAVID BROWN, LASZLO BOZSO, and MERIS DUDZIC, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) ) | No. 5:13-CV-00079-RLV-DSC (consolidated case number) |
| | ) | |
| LOWE'S COMPANIES, INC., and LEXISNEXIS SCREENING SOLUTIONS, INC. | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| APRIL INGRAM-FLEMING, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:15-CV-00018-RLV-DSC |
| | ) | |
| LOWE'S HOME CENTERS, LLC, d/b/a LOWE'S, | ) ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Jason Brown, Laszlo Bozso, Meris Dudzic, and April Ingram-Fleming ("Plaintiffs") pursuant to Rule 23 of the Federal Rules of Civil Procedure and LCvR 7.1, hereby respectfully submit their memorandum of law in support of their motion for final approval of the settlement of the Disclosure Settlement Class with Defendant Lowe's Companies, Inc. ("Lowe's") (Plaintiffs and Lowe's are collectively referenced below as, the "Parties").

## I. __INTRODUCTION.__

Plaintiffs seek final approval of the settlement of the Disclosure Settlement Class, which the Court preliminarily approved on February 26, 2016. (Doc. 105; the "Preliminary Approval Order"). The proposed settlement resolves all claims brought against Lowe's under 15 U.S.C. § 1681b(b)(2) of the Fair Credit Reporting Act ("FCRA"),[1] which claims are referred to as the "Disclosure Claims."

In finally approving a settlement, the Court must determine whether the proposed class action settlement comports with Rule 23(e)(2) of the Federal Rules of Civil Procedure, which allows approval "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Here, the Plaintiffs show that the settlement is abundantly fair, reasonable, and adequate, and the Court should approve it. The settlement resulted from more than two years of contentious litigation, and was facilitated by an experienced mediator. If the Parties had not settled, Plaintiffs faced the possibility of the Court granting Lowe's motion to dismiss the Disclosure Claims, which would have resulted in no relief for the Disclosure Class Members. Conversely, had the Plaintiffs

---

[1] Section 1681b(b)(2) of FCRA requires a user of an employment-purposed consumer report (such as a background check) to make certain specific disclosures before obtains the report. The statute provides:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless— (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2).

successfully proved a willful violation of the FCRA, Lowe's faced the possibility of a judgment awarding statutory damages between $100 and $1,000 per violation. With the estimated size of the class, such a judgment could have been significant.

Given the risks and uncertainty faced by both parties, the present settlement is a reasonable resolution for the Disclosure Class Members. The estimated size of the class as of the filing of this motion is 422,040 individuals. Each Disclosure Class Member living within 25 miles of a Lowe's store may elect to receive a Lowe's gift card in the estimated amount of $50. The Disclosure Class Members not living within 25 miles of a Lowe's store have the option to receive the gift card, or a check in the estimated amount of $35. (*See* Disclosure Class Settlement Agreement, Doc. 97-1, §§ 7.1.1 – 7.1.4).

In exchange, the class members are only providing a narrow release of claims under 15 U.S.C. § 1681b(B)(2) and its state-law equivalents. Each class member is eligible for this award without having to prove any damages individually. The fairness and adequacy of the settlement is further demonstrated by the small number of objections and opt-outs. There are only six objections to the Settlement (and, as noted in further detail below, those objections are without merit). Further only approximately 1,428 individuals have opted out of the class, constituting 0.3% of the Disclosure Class Members.[2]

Given the complexity of this litigation, the significant risks and uncertainties that the parties would face if litigation of the Disclosure Claims were to proceed, and the real benefits conferred on the class, this Court can and should finally approve the settlement.

---

[2] It is often the case that some existing employees of an employer-defendant, as in this case, will opt out believing that they would otherwise be in conflict with their existing employer. The low percentage of exclusions here is thus more remarkable and tends to reflect a reasonable class resolution.

## II.   RELEVANT CASE BACKGROUND.[3]

The Settlement is the culmination of approximately four years of work by the seven law firms now serving as Class Counsel.  The present Class Counsel team had researched, prepared and drafted for a substantial period of time before these proceedings were filed and before they were consolidated in this Court.  This case was originally the collaboration of four different teams of attorneys representing three different and unrelated plaintiffs each from a different state.  Over the course of roughly a year, Mr. Brown's Counsel (Caddell & Chapman), Mr.  Bozso's counsel (O'Toole McLaughlin Dooley & Pecora Co. LPA) and Ms. Didzic's counsel (Lyngklip & Associates Consumer Law Center, PLC), each had worked to research, develop and draft their own class cases.  During this period, each reached out to the other through Leonard Bennett of Consumer Litigation Associates, who had been independently contacted by each of the co-counsel because of his successful previous and ongoing work regarding the system First Advantage had set up for Lowe's and its similar customers.   Finally, as discussed below yet another case, involving Ms. Ingram-Fleming, had been filed in Florida, which eventually was also consolidated with the instant matter.  In short, there was a significant amount of work by different attorneys before the consolidated proceedings began in earnest in this Court.

On May 16, 2013, Plaintiffs Jason Brown, Laszlo Bozso and Meris Dudzic filed their original complaint in the lawsuit styled *Brown, et al. v. Lowe's Companies, Inc., et al.,* Civil Action No.  5:13-CV-00079-RLV-DCK,  W.D.N.C.,  Statesville  Division  (Doc.  1).  Plaintiffs  sued

---

[3] The case background, nature of Plaintiffs' claims, and settlement structure are also detailed in the motion for preliminary approval of the proposed class settlement (Doc. 96) and the supporting memorandum (Doc. 97), as well as in the Court's Preliminary Approval Order (Doc. 105).  Plaintiffs adopt and incorporate by reference those filings.

Defendants Lowe's and First Advantage Background Services Corp. ("First Advantage")[4] and alleged violations of various provisions of the FCRA as part of the hiring process. (*See id.*) The original complaint alleged, *inter alia,* that Lowe's willfully failed to comply with the requirements in 15 U.S.C. § 1681b(b)(3)(A) when using a consumer report pertaining to the named Plaintiffs and other similarly situated individuals for employment purposes. (Doc. 1, ¶¶ 86-90.)

The original complaint alleged that Lowe's contracted with First Advantage, who provided consumer reports concerning applicants who had sought employment with Lowe's. (Doc. 1, ¶¶ 2-6.) Plaintiffs alleged that information provided by First Advantage was relied upon by Lowe's in rendering employment decisions. (*Id.* ¶ 3.) Plaintiffs alleged that each sought employment with Lowe's between 2008 and 2011 but was not hired. Mr. Brown applied for employment at Lowe's in 2011 (*id.* ¶¶ 25-28), as did Mr. Boszo. (*Id.* ¶¶ 35-40.) Ms. Dudzik applied in 2008. (*Id.* ¶¶ 43-47.) Each alleged that after reports and background checks, Lowe's did not provide a timely copy of the materials reviewed or a summary of the information. (*Id.* ¶¶ 27-30, 42-48.)

After amending the complaint once, engaging in briefing a motion to dismiss and a motion for class certification, Plaintiffs Brown, Bozso, and Dudzic filed a Second Amended Complaint on January 22, 2015. (Doc. 56). In this pleading, Plaintiffs asserted the Disclosure Claims, alleging that Lowe's willfully violated 15 U.S.C. § 1681b(b)(2)(A) by failing to comply with disclosure and authorization requirements before procuring a consumer report on them and a class of other people. (*Id.* ¶¶ 98-102.)

Shortly after Brown, Bozso, and Dudzic filed the Second Amended Complaint, Plaintiff April Ingram-Fleming joined this case as a Plaintiff after the Court consolidated her suit which

---

[4] First Advantage was previously known as Lexis Nexis Screening Solutions. (Doc. 100). For reference and consistency, this motion will refer to that entity's current name, First Advantage.

had been originally filed in the Middle District of Florida with this case.[5] (Doc. 64.)  In her live Florida complaint at the time of consolidation with this case, Ms. Ingram-Fleming had also asserted claims under 15 U.S.C. § 1681b(b)(2)(A). (Case No. 8:14-cv-02569-SDM-MAP, Doc. 16, ¶¶ 69-73.)  Lowe's moved to dismiss the Disclosure Claims on May 1, 2015.  (Docs. 77, 78).

Throughout the case, the Court has entered various orders staying the proceedings so the parties could engage in mediation.  (*See* Docs. 63, 79, 86, 88, 90, 93.)  The parties took advantage of the time granted by the Court, engaging in a protracted arms'-length mediation and negotiation process with mediator Hunter R. Hughes of the Atlanta law firm Rogers & Hardin LLP, including an in-person mediation session in Atlanta on May 27, 2015 and dozens of telephonic and written contacts and communications between Mr. Hughes and the parties. (*See* Docs. 87, 89, 92, status reports).  The Parties reached an agreement in principle on July 29, 2015, which was then memorialized into a Memorandum of Understanding to resolve the Plaintiffs' claims under 15 U.S.C. § 1681b(b)(2).  *See id.*

After the filing of the motion for preliminary approval and for certification of a settlement class, and filing of supporting materials, including the settlement agreement, the Court entered the Preliminary Approval Order on February 26, 2016, and set the final fairness hearing for June 6, 2016.  (Doc. 105.)  In the Order, the Court appointed American Legal Claim Services ("ALCS") as the Claims Administrator.  (*Id.*)

---

[5] All references to "Lowe's" herein are deemed to include both the Defendant Lowe's Companies, Inc. named in the *Brown* case and "Lowe's Home Centers, LLC, d/b/a Lowe's" named in the *Ingram-Fleming* case.

## III. TERMS AND ADMINISTRATION OF THE SETTLEMENT.

### A. Preliminary Approval of Disclosure Settlement Class.

The Court preliminarily approved the following "Disclosure Settlement Class" under 15 U.S.C. § 1681b(b)(2), with the constituent class members known as "Disclosure Class Members," as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions) (a) who submitted an employment application to Lowe's, and (b) who were the subject of a consumer report procured by Lowe's for employment purposes between (1) October 9, 2012 and May 6, 2015, or (2) October 9, 2012 and July 5, 2015, if he or she applied for employment at Lowe's corporate headquarters through an external source, or (3) October 9, 2012 and July 9, 2015, if he or she applied for employment with Lowe's corporate headquarters at a kiosk.

(Doc. 105, ¶ 2.) Excluded from the Class were all counsel of record, and any judge or magistrate assigned to this matter together with their immediate family members and judicial staff. (*Id.*) At the time of preliminary approval, Lowe's estimated there were approximately 450,533 Disclosure Class Members. (*Id.*) The approximate number as of the filing of this motion is 422,040. (**Exhibit 1**, Declaration of Steve Platt ("Platt Decl.") at ¶ 10.)[6]

In the Preliminary Approval Order, the Court designated Plaintiffs Jason Brown, Laszlo Bozso, Meris Dudzic and April Ingram-Fleming as the Class Representatives (Doc. 105, ¶ 3), and preliminarily appointed as Class Counsel, Caddell & Chapman, Consumer Litigation Associates, P.C., O'Toole, McLaughlin, Dooley & Pecora, Co., LPA, Lyngklip & Associates Consumer Law Center, PLC, Sellers, Ayers, Dortch & Lyons, P.A., Wenzel, Fenton, Cabassa, P.A., and Wallace & Graham, P.A. (*Id.* ¶¶ 3-4.)

---

[6] Each of the numbers referenced in this Motion as to class size, number of elections, and the value of the gift cards and cash payments represent the best estimate to date. However, timely filed elections and requests for exclusion continue to arrive, and ALCS continues to process them. The Parties will supplement these figures prior to the Final Fairness Hearing.

**B. Consideration provided under the Settlement.**

Under the Settlement, each class member could elect to receive a gift card, or for class members who live further away from Lowe's stores, a cash payment in lieu of a gift card. (Doc. 97, Settlement Agreement, §§ 1.13, 7.1.)

Disclosure Class Members who submitted a valid election form providing a current address and live within 25 miles of a Lowe's store could receive a Gross Individual Settlement Award in the form of the gift card.[7] (*Id.* § 7.1.2.)

Disclosure Class Members who submitted a valid Election Form and lived more than 25 miles from a Lowe's store could elect instead to receive a Gross Individual Settlement Award in the form of a check. (*Id.* § 7.1.3.)

This structure is designed to ensure that the consideration paid is not illusory. The payment mechanism of the Settlement provides for a meaningful benefit in that class members who live relatively closer to Lowe's stores will be able to receive a gift card that they can use at the store. (*See* **Exhibit 2**, Declaration of Michael Caddell ("Caddell Decl."), ¶ 32.) Class members who live further from a store may instead elect to receive a check they can cash. (*Id.*)

Importantly, the gift cards will not have any unusual limitations or restrictions but rather will be transferable and subject only to the same Terms and Condition as of August 31, 2015 as the ordinary Gift Cards Lowe's sells in the ordinary course of its retail business. (Doc. 75, § 7.1.5.; Caddell Decl., ¶ 32.)

The Settlement, if finally approved, will provide real and significant value to more than

---

[7] The "Gross Individual Settlement Award" is the value of the Settlement Benefits for each individual class member before attorneys' fees, expenses and any service awards are deducted. Settlement Agreement (Doc. 97 § 1.19.) The "Maximum Settlement Amount" is the sum of all Gross Individual Settlement Awards awarded and is all-inclusive. (*Id.* § 1.22.)

48,549 Disclosure Class Members who have made the election to receive a gift card or, if appropriate, cash. (Platt Decl. ¶ 14.)

C. **Notice and Settlement Administration.**

As noted, in accordance with the Preliminary Approval Order, ALCS has acted as the Claims Administrator in charge of administering the terms of the Settlement Agreement and notification to the Disclosure Class Members. (Doc. 105 ¶ 6.).

ALCS has been responsible for overseeing the dissemination of notice to the class, establishing and maintaining a Settlement Website, and establishing and maintaining a Telephone Assistance Program. (Ex. 1, Platt Decl. ¶ 2.)

1. *ALCS performs its initial data analysis.*

After the Court entered the Preliminary Approval Order, Lowe's provided ALCS with a single data file consisting of the names, addresses, and email addresses of Disclosure Class Members. (Platt Decl. ¶ 3.) The data file included 422,040 Class Member names, addresses and email addresses, and ALCS assigned a unique ID to each Class Member's record. (*Id.*)

ALCS submitted each Class Member's name and address to the United States Postal Service ("USPS") National Change of Address database ("NCOA") and analyzed the results. (Platt Decl. ¶ 4.) The NCOA database identified 22,797 addresses for Class Members were not valid or deliverable based on the USPS standards. (*Id.* ¶ 4.) ALCS returned these records along with their unique ID to Lowe's and asked Lowe's to provide the last four numbers of each Class Member's Social Security Number. (*Id.*)

On April 25, 2016, Lowe's provided back to ALCS the updated list of Class Members for whom their address was not valid or deliverable, which contained the last four numbers of each Class Member's Social Security Number. (*Id.* ¶ 5.) ALCS submitted this information to a

9

nationally recognized location service company and obtained valid addresses for 21,403 of the 22,797 that were not previously valid or deliverable.  (*Id.*)

## 2. *ALCS sends out Notice Package in accordance with the Court's Preliminary Approval Order.*

ALCS mailed the Class Notice, Election Form and Exclusion Form (the "Notice Package"), via USPS first-class postage prepaid, to all 420,646 Class Members that had a valid or deliverable address.  (Platt Decl. ¶ 6; Platt Dec. Ex. A, Notice Package.)  ALCS also emailed the Notice Package to the 1,394 Class Members for whom a deliverable address was not obtained.  (Platt Decl. ¶ 6.)  The emailed notification contained hyperlinks to the Settlement website and personalized Election Form.  (*Id.*)  Of the 1,394 email notifications transmitted, 131 were not delivered. (*Id.*)

ALCS then processed all mail returned by the USPS.  (*Id.* ¶ 7.)  ALCS took reasonable steps to obtain correct address information of any Class Member for whom the Notice Package was returned.  (*Id.* ¶ 7.)  First, ALCS submitted the Class Member's name and address information to the USPS NCOA database prior to the initial mailing.  (*Id.*)  Second, after any Notice Package was returned without an updated address provided by the USPS, ALCS submitted the Class Member's name and address to a nationally recognized location service.  (*Id.*)  For any updated addresses received, ALCS updated the Class Member database and re-mailed the Notice Packages. (*Id.*)

Of the 420,646 Notice Packages initially mailed, 38,448 were returned undeliverable.  (*Id.* ¶ 8.)  ALCS received an additional 1,237 that had forwarding addresses, and it re-mailed the Notice Packages to the corresponding forwarding address. (*Id.*)  ALCS used a nationally recognized location service to locate and update the remaining addresses, and by May 19, 2016, it had re-mailed 31,643 Notice Packages.  (*Id.*)

As of May 19, 2016, ALCS was unable to locate 7,588 Class Member addresses that were returned as undeliverable, despite using the skip trace database, and 454 were still in process.  (*Id.* ¶ 9.)   Additionally, the USPS returned 4,880 of the re-mailed packages as undeliverable as addressed.  (*Id.* ¶ 9.)   Of the 12,922 Class Members for whom a Notice Package was not delivered via USPS, 5,825 were successfully sent Notice Packages via email.  (*Id.* ¶ 9.)   ALCS estimates that by one means or another, the class notice was transmitted to over 98% of the class members.  (*Id.* ¶ 10.)

### 3.  *ALCS establishes and maintains the settlement website.*

Under the Settlement Agreement, ALCS also established and maintained a case-specific, standalone website to provide notice of the Disclosure Class Settlement.  It was located at www.LowesFCRASettlement.com.  (Platt Decl. ¶ 11.)

The website contained the full text of the Settlement Agreement, the Mail Notice, the Election Form, the Opt-Out Form, the Preliminary Approval Order, and the contact information for Class Counsel and the Claims Administrator.  (*Id.*)

### 4.  *ALCS establishes and maintains a telephone assistance program.*

ALCS also established a dedicated toll-free phone number to provide answers to questions and inquiries from the Disclosure Class Members.  (Platt Decl. ¶ 12.)  The toll-free number provided a voice response unit listing of questions and answers to frequently asked questions and the option to access live agent support.  (*Id.*)  Live agent support consisted of either English or Spanish speaking agents.  (*Id.*)  As of May 19, 2016, ALCS had received 5,313 calls regarding the Settlement, of which 1,226 chose to speak with a live agent.  (*Id.*)

### 5.  *ALCS receives and processes requests for exclusions.*

Under the Preliminary Approval Order, the Disclosure Class Members could opt out of the

Class by submitting their written request to ALCS so that they were received on or before May 16, 2016.  (Doc. 105, ¶ 8.)

As of May 19, 2016, ALCS had received a total of 1,428 valid timely exclusion (or "Opt-Out") requests. (Platt Decl. ¶ 13 & Platt Dec. Ex. B, listing of valid and timely Opt-Out requests.) In addition to the valid and timely Opt-Out requests, ALCS has received 166 invalid opt-outs that were either not signed, did not include an Opt-Out statement, or were filed with an Election Form requesting to receive a settlement benefit.  (Platt Decl. ¶ 13 & Platt Dec. Ex. C, listing of invalid Opt-Out requests.)

### 6. *ALCS receives and processes Election Forms.*

Under the Settlement Agreement, eligible Disclosure Class Members were afforded the opportunity to complete and return to the Claims Administrator their Election Forms, in which they could elect to receive either a gift card or, for certain Disclosure Class Members living more than 25 miles from a Lowe's store, a check in lieu of the gift card. (Platt Decl. ¶ 14; Doc. 97, Settlement Agreement, §§ 1.13, 7.1, 7.1.2, 7.1.3.)

As of May 19, 2016, ALCS had received 48,549 Election Forms.  (Platt Decl. ¶ 14.)

## IV.  THE COURT SHOULD CERTIFY THE DISCLOSURE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES.

In the Preliminary Approval Order, the Court conditionally certified the Disclosure Settlement Class, holding that it met Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, as well as Rule 23(b)(3)'s predominance, superiority, and manageability requirements.  (Doc. 105, ¶ 4.)  For the same reasons, the Court should certify the Classes for settlement purposes here.

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THE COURT CAN AND SHOULD FINALLY APPROVE IT.

### A. The standard for final approval of class action settlements within the Fourth Circuit is well-established.

There is a strong and long-standing judicial policy within this Circuit favoring resolution of litigation before trial. *See S.C. Nat'l Bank v. Stone*, 749 F.Supp. 1419, 1423 (D.S.C. 1990) ("[t]he voluntary resolution of litigation through settlement is strongly favored by the courts") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources. As the court in *South Carolina National Bank* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F.Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

Rule of Civil Procedure 23(e) requires that the Court evaluate and approve any class action settlement. Fed. R. Civ. P. 23(e). Rule 23(e) thus imposes two basic requirements on the parties and on the Court before the approval of a class settlement and dismissal. First, the Court must determine that notice was directed "in a reasonable manner to all class members." Fed R. Civ. P. 23(e)(1). Second, the Court must determine that the settlement "is fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2).

Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S.C. Nat'l Bank*, 139 F.R.D. at 339).

**B. The notice provided to Disclosure Class Members was reasonable and the best practicable under the circumstances.**

Due process requires reasonable notice to 23(b)(3) class members. *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005). The notice to Rule 23(b)(3) class members must inform class members (1) of the nature of the action; (ii) of the definition of the class certified; (iii) of the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) of the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Rule 23 does not require perfect notice but, rather, "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c). This requirement is satisfied with a mailing of the notice to each class member by first class mail. *Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 472 (W.D. Va. 2011).

As detailed above, ALCS took diligent measures to ensure the Notice Package was disseminated to as many of the Disclosure Class Members as was reasonably possible. (*See supra,* § III(C); Platt Decl., attached as Ex. 1.) The class list compiled by Lowe's included 422,040 Disclosure Class Members; ACLS was able to determine valid or deliverable addresses for 420,646 (constituting 99.67%) of those, and sent the Notice Package to each. (Platt Decl. ¶ 6.)

Of those initially mailed, only 38,448, or 9.1%, were returned undeliverable. (*Id.* ¶ 8.) ALCS used a skip trace database to locate and update addresses for those individuals, and as of May 19, 2016, had re-mailed 31,643 Notice Packages with the new addresses it had found. (*Id.*) Additionally, ALCS received 1,237 packages that had forwarding addresses, and re-mailed the

Notice Packages to those addresses. (*Id.*) For the remaining 1,394 Disclosure Class Members for whom no good addresses could be found, ALCS emailed the Notice Packages. (*Id.* ¶ 6.) Of the 1,394 email notifications transmitted, only 131 were not successfully delivered. (*Id.*) In sum, as of May 19, 2016, the presumed Notice Package delivery rate was 98.3%. (*Id.* ¶ 10.)

What constitutes "reasonable efforts under the circumstances" under Rule 23(c)(2) is for the Court to determine after "examining the available information and possible identification methods." *Fisher v. Va. Elec. & Power Co.,* 217 F.R.D. 201, 227 (E.D. Va. 2003) (citations omitted). Reasonableness "is a function of [the] anticipated results, costs, and amount involved." *Id.* The Supreme Court has concluded that direct notice satisfies due process, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985), and other courts have approved mailed notice programs that reached a much smaller percentage of class members than the class notice reached in this case. *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion was estimated to have reached 80% of class members); *Martin v. United Auto Credit Corp.*, 3:05cv00143 (E.D. Va. Aug. 29, 2006) (Final Order approving class notice with approximately 85% delivery). Here, the notice sent to class members by ALCS satisfied each of the requirements of Rule 23(e)(1) and Rule 23(c)(2)(B). The content of the notice is similar to many other class notices. (*See* Ex. A to Platt Decl., Notice Package.) And, the measures and steps taken to send out the notice are similar to those undertaken by notice administrators in many other class actions and have often been approved by the courts.

**C. <u>The required CAFA notices have been sent.</u>**

Furthermore, Lowe's certified that it served notice of this settlement on the relevant federal authorities as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. (*See* Doc. 98.) Under CAFA, to provide additional assurance that relevant stakeholders and

authorities learn of the settlement and have an opportunity to comment, the statute provides that the settling parties provide notice of a proposed settlement to interested federal and state governmental authorities.  28 U.S.C. § 1715.

Here, no governmental entity has made any objection to the proposed settlement.  That fact can give this Court additional assurance that this is a reasonable settlement.  *See, e.g.*, *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 590 (E.D. Mich. 2006) (granting final approval to proposed class action settlement and noting that "GM issued notice to the appropriate federal and state attorneys general pursuant to [CAFA.] None submitted an objection."); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The Court notes that in several recent Title III of the ADA class actions in this district which were similarly noticed, the Department of Justice and several state attorneys general filed objections. This has not been the case in this matter.  The fact that no objections have been filed strongly favors approval of the settlement.").

The Parties' efforts to provide class members with notice of the settlement makes it clear that such notice was the best available notice under the circumstances given the available information, the choice of possible identification methods, the number of class members, and the amount and substantive terms of the settlement.  *See Fisher,* 217 F.R.D. at 227.  The Parties working with the notice administrator have complied with the provisions of the Court's Preliminary Approval Order, and have taken reasonable steps to ensure that the Class Members were notified of the settlement's terms and benefits.

**D. Analysis of the *Jiffy Lube* factors show the Settlement is fair and reasonable, and should be finally approved.**

The "fairness" analysis of a settlement ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). A settlement is entitled to a presumption of reasonableness where, as here, it is the result of arm's-length negotiations between competent counsel. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *S.C. Nat'l Bank*, 139 F.R.D. at 339; *see also United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (recognizing that where a court is satisfied that the decree was the product of good faith, arm's-length negotiations, a negotiated decree is presumptively valid and the objecting party "has a heavy burden of demonstrating that the decree is unreasonable.").

The Court's primary concern in the fairness analysis is confirming that the rights of absent class members received sufficient consideration in the settlement negotiations. *In re Jiffy Lube*, 927 F.2d at 158. The factors that the Court should consider in the fairness determination include "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation." *Id.* at 159; *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).

The Court should conduct its analysis in light of the "overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo*, 2009 WL 3094955, at *10 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). In addition, "[t]here is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo*, 2009 WL 3094955, at *10.

Here, because the Settlement was reached after contentious, arm's-length negotiations and is an excellent result for the Disclosure Class, the Court should confirm the fairness decision it reached on preliminary approval of the Settlement.

1. ***The parties reached the Settlement after more than two years of contested litigation with the aid of an experienced mediator.***

The settlement is the culmination of more than two years of contested, adversarial litigation. (*See* Ex. 2, Caddell Decl. ¶¶ 35-44.) Among other things, the docket reflects how Lowe's filed a motion to dismiss Count One of Plaintiffs' Original Complaint on July 11, 2013. (Doc. 31.) Plaintiffs responded on August 19, 2013. (Doc. 41.) The Court denied that motion on September 30, 2014. (Doc. 46.)

The Court granted leave for Plaintiffs to file a Second Amended Complaint on January 20, 2015. (Doc. 55.) Plaintiffs filed the Second Amended Complaint, asserting the Disclosure Claims, on January 22, 2015. (Doc. 56.)

On February 20, 2015, the Court consolidated the *Brown* and *Ingram-Fleming* cases. (Doc. 64.) In the meantime, the Parties exchanged formal and informal discovery as to each other's claims and defenses. (*See* Caddell Decl. ¶ 35, 38, 42.)

The matter went into discovery but remaining contested. On May 1, 2015, Lowe's moved to dismiss Plaintiffs' Disclosure Claims. (Doc. 77, Motion to Dismiss; Doc. 78, Memorandum in Support.)

On May 27, 2015, with the motion to dismiss not yet ruled upon by the Court, the parties mediated with renowned mediator Hunter R. Hughes of the Atlanta law firm Rogers & Hardin LLP. (Caddell Decl. ¶ 38.) The parties did not reach a settlement on that date, but continued exchanging information and negotiating toward a resolution. (*Id.*) After multiple telephone calls and email exchanges addressing key details, and with the continued assistance and oversight of

Mr. Hughes throughout the process, the parties reached an agreement in principle on July 29, which was then memorialized into a Memorandum of Understanding. (*Id.*)

Given this background, the fact that negotiations were "adversarial" and were conducted at "arm's length" helps dispel any concern that counsel colluded in reaching agreement. *In re Microstrategy,* 148 F.Supp.2d 654, 665 (E.D.Va. 2001). Moreover, supervision by a mediator "lends an air of fairness to agreements that are ultimately reached." *South Carolina Nat'l Bank v. Stone,* 139 F.R.D. 325, 330-31 (D.S.C. 1991).[8]

### 2. *Plaintiffs' counsel have decades of combined experience in class actions and other complex consumer litigation.*

Among them, Plaintiffs' counsel have decades of experience in class action litigation, particularly in the consumer realm, and more particularly in the FCRA realm. (*See* Exhibits 2, Declaration of Michael Caddell, 3, Declaration of Brandon J. Hill, 4, Declaration of John Hughes, 5, Declaration of Matthew A. Dooley, 6, Declaration of Brett Dressler, 7, Declaration of Ian Lyngklip, 8, Declaration of Leonard Bennett.)

This fact weighs heavily in favor of the fairness of the Settlement. Moreover, the Court preliminarily appointed each of those attorneys' firms as Class Counsel. (Doc. 97-6.) Plaintiffs respectfully request that the Court finally appoint them as Class Counsel.

Given each of the foregoing, this Court can and should find that the Settlement was fair under the *Jiffy Lube* factors. 927 F.2d at 158-59.

### E. The Settlement is substantively adequate under *Jiffy Lube*.

The Fourth Circuit in *Jiffy Lube* instructs the Court to also determine whether the proposed

---

[8] *See also, e.g., In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator[.]").

class settlement is substantively "adequate." That analysis is guided by evaluating: (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *In re Jiffy Lube,* 927 F.2d at 159.

## 1. *Lowe's vigorously defended against the Disclosure Claims, as to both liability and damages.*

As noted above, less than a month before the mediation session with Hunter Hughes, Lowe's had moved to dismiss the Disclosure Claims. (Docs. 77, 78, Motion to Dismiss and Memorandum in Support.)

In that filing, one of the several arguments made by Lowe's was that Plaintiffs could not, as a matter of law, state a claim for willful violations of Section 1681b(b)(2) – the Disclosure Claims subject of the Settlement. (*See* Doc. 78, pp. 21-25.) A willful violation is a necessary prerequisite for obtaining a recovery of statutory damages under the FCRA. *See* 15 U.S.C. § 1681n.

In light of this motion and the contested nature of the claim, the Plaintiffs, though believing that their claims were meritorious, were by no means certain to succeed on the merits. (Caddell Decl. ¶ 39.) Indeed, Plaintiffs were faced with the difficulties of (1) demonstrating a class-wide failure by Lowe's to comply with the disclosure provisions of 15 U.S.C. § 1681b(b)(2) with respect to the Disclosure Class Members, (2) rebutting Defendant's potential defenses, (3) proving willful violations, (4) proving and substantiating actual damages, including statutory damages (ranging between $100 and $1,000 per Settlement Class Member) under 15 U.S.C. § 1681n for alleged willful violations, and (5) fully certifying Plaintiffs' claims for purposes of trial as a contested

class.  (Caddell Decl. ¶ 39.)

The Settlement provides each Disclosure Class Member meaningful relief, in the form of either a gift card or cash, without having to take on the burden of proving any of those contested elements.

### 2. *The additional expense and risk the parties would face at trial demonstrates the adequacy of the Settlement.*

Due to, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of continued litigation, the Parties were willing to enter into the Settlement.  (Caddell Decl. ¶¶ 39-41.)  The risk, expense and uncertainty with respect to continued litigation supports the settlement.

Although Disclosure Class Members' damages could hypothetically exceed the payments they will receive, they would only recover all of those damages if: (1) Plaintiffs succeeded at certifying their claims as class actions, (2) the Disclosure Class Members won on every theory – including willfulness – at trial, and (3) a jury decided their collective claims exceeded the amount of the Settlement Fund.  (*Id.* ¶ 40.)

And none, much less all, of these conditions were foregone conclusions.  (*Id.*)  Further, defendant First Advantage is not a party to the Settlement, and continues to contest the Plaintiffs' claims.  (*See* Docs. 106-107, Motion for Summary Judgment and Memorandum in Support.)

In summary, by entering into the settlement with Lowe's, Plaintiffs have reduced the number of contested claims in the case, have avoided risk and uncertainty, and have reduced the time and expense of a potential trial as to the other claims.[9]

---

[9] Plaintiffs and Lowe's also recently filed a Joint Motion for Preliminary Approval of the Pre-Adverse Action Class Settlement.  (Docs. 124, 125).  If the Court ultimately finally approves that settlement, then all claims against Lowe's will be out of the case, thereby reducing the number of potential defendants at trial by one half.

### 3.  *The relative lack of opposition to the Settlement demonstrates its adequacy.*

One district court in the Fourth Circuit has noted that "reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re Microstrategy,* 148 F.Supp.2d at 668.

When there is a small number of objections and opt-outs, this supports the conclusion that it was an adequate settlement. *See id.; see also In re The Mills Corp. Securities Litigation*, 265 F.R.D. 246, 257 (E.D. Va. 2009).

Here, there are relatively few objections (six, out of 422,040 class members) and only a small percentage of class members (1,428, or approximately 0.3%) opting out.  (Exhibit 1 – Platt Decl.).  These facts support the adequacy of the settlement.  *See The Mills Corp.,* 265 F.R.D. at 257 ("[A]n absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.")

And though (as noted in further detail below) the few objections show a "philosophical disagreement with class action litigation, a general disagreement with this litigation in particular, or dissatisfaction with class counsel's requested attorney's fees, they do not impugn the adequacy of the settlement itself." *Domonoske,* 790 F.Supp.2d at 474. Considering all these factors, the Settlement is adequate under the *Jiffy Lube* standard.

## VI.  THE OBJECTIONS TO THE SETTLEMENT ARE WITHOUT MERIT, AND THE COURT SHOULD OVERRULE THEM.

As detailed above, the settlement is fair and adequate, and should be finally approved.  In any event, after the Court has already given preliminary approval, "an agreement is presumptively reasonable, and an individual who objects has a heavy burden of demonstrating that the settlement

is unreasonable." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007).[10]

General objections without factual or legal substantiation do not carry weight. *Id.*, citing 4 NEWBERG ON CLASS ACTIONS § 11:58 (4th ed.2002); *see also* FED. PRAC. & PROC. § 1797.1 (providing that in class action settlement dispute "[o]nly clearly presented objections ... will be considered"). And when objectors seek individual terms more favorable than those applicable to other class members, they should be approved only on a showing of a reasonable relationship to facts or law that distinguish the objector's position from other class members. *In re Serzone,* 231 F.R.D. at 233; MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.643 (2004).

Here, none of the objectors here can make such a showing. Moreover, some of the objectors misapprehend the distinction between objecting to the settlement and requesting exclusion from it. In any case, the Court should overrule the objections.

As of the date of the filing of this motion, there were only six objections to the Settlement. Brian Greer and Bicentanul Long' objections were filed at Docs. 120 and 121 respectively. As Mr. Greer's filing indicates, he decided to "withdraw [his] objection to the settlement with defendant Lowes [sic]." (Doc. 120, pp. 1, 7.) The Court should therefore disregard that filing.

Additional objections were mailed to counsel by Marshawn J. Hamlett, Joe Campos, Chris Weygint, and Michael Little. They are addressed below and attached to Mr. Caddell's Declaration

---

[10] *See also, e.g., Mayborg v. City of St. Bernard*, 1:04-CV-00249, 2007 WL 3047235, at *3 (S.D. Ohio Oct. 18, 2007) ("With such preliminary approval, the settlement is presumptively reasonable, and an individual who objects has a heavy burden of proving the settlement is unreasonable."); *Moore v. United States*, 63 Fed. Cl. 781, 784 (Fed. Cl. 2005) (same); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ("Preliminary approval gives rise to a presumption that the settlement is fair, reasonable and adequate. Objectors, therefore, have the burden of persuading this Court that the proposed settlement is unreasonable.").

as Exhibits 1-4 thereto.[11]  The Court should overrule each of the objections.

**A.  <u>Mr. Hamlett's objection does not assert any specific objection to the Settlement</u>.**

Hamlett's objection states that he wishes to "object to the settlement amount" on the grounds that he does not "feel it is [an] adequate amount for a violation of my rights and information." (*See* Exhibit 1 to Caddell Decl.)  Hamlett then stated that he "gives permission to Brown's lawyers to represent me . . . at any and all hearings." (*Id.*)  He does not articulate any basis to support his position.  The Court should overrule that objection.

**B.  <u>Mr. Campos's objection is without merit</u>.**

Mr. Campos does not challenge the fairness of the "dollar amount Lowe's is offering," but rather objects to the method of gift cards that can only be redeemed at Lowe's stores. (*See* Exhibit 2 to Caddell Decl.)  First, the gift card award only applies to Disclosure Class Members who live within 25 miles of a Lowe's, or for those who live more than 25 miles from a Lowe's but nonetheless elect the gift card. (Doc. 97-1, §§ 7.1.1 – 7.1.4.)  This structure ensures that those Disclosure Class Members who do not live near a Lowe's store may elect the cash award. Second, although Mr. Campos correctly notes the gift cards can only be used at Lowe's stores, the cards do not contain any unusual limitations or restrictions. (Caddell Decl. ¶ 32.)

Lowe's, as a national consumer retailer of home products, sells a wide variety of items that all Disclosure Class Members could find useful. Similar classes have been approved before. *See Reibstein v. Rite Aid Corp.* 761 F.Supp.2d 241, 255-56 (E.D. Pa. 2011) (approving class awarding gift cards that have "no expiration date, are freely transferrable, and can be used for literally thousands of products for which ordinary consumers, including class members, have need");

---

[11] Also, Mr. Weygint's objection was filed with the Court the afternoon of the subject filing, at Doc. 126.

*Fernandez v. Victoria Secret Stores, LLC,* No. 06–4149, 2008 WL 8150856, at *6 (C.D.Cal. July 21, 2008) (approving settlement where class members were awarded a freely transferrable gift card). Mr. Campos's objection should be overruled.

In today's economy, such unrestricted gift cards have real cash value, as the internet has created a resale market. Consumers can review and select from any number of alternative buyers at gift card exchange websites. *See* http://gift-card-exchange-review.toptenreviews.com, last visited May 23, 2016. (**Exhibit 9**). There is a market for the resale of such gift cards and a number of available online buyers for Lowe's Gift Cards. One of the leading online buyers, CardPool, shows an available purchase price for a $50.00 Lowe's gift card at $40.50 if sent by mail, or $38.00 if the seller sold via transfer of the card code online. *See* http://www.cardpool.com/sell/offers, last visited May 23, 2016. (**Exhibit 10**). And one of the largest machine vendors in ordinary grocery stores, CoinStar[12], also has "brick and mortar" kiosks to transact the sale and purchase of Lowe's (and other mainstream) gift cards. (**Exhibit 11**).

### C. Long's and Weygint's objections suggest they should have excluded themselves from the Disclosure Class instead of objecting.

Neither Mr. Long's objection (Doc. 121) nor Mr. Weygint's (Exhibit 3 to Caddell Decl.) attacks the overall fairness or adequacy of the Settlement, but instead they each raise personal grievances related to their employment applications to Lowe's.

Mr. Long claims he was rejected for employment by Lowe's because of a "minor drug possession felony over 10 years old," and argues that a "gift card cannot replace a career." (Doc. 121 at p. 2.) Mr. Weygint claims he was sent home from his job at Lowe's due to a "problem with my background check." (*See* Exhibit 3 to Caddell Decl.) He claims his dismissal from

---

[12] CoinStar machines are the ones that exchange coins for paper money or for a gift card.

Lowe's prevented him from spending time with his dying grandmother, and that "$50 does not give me the time back I lost" with her. (*Id.*)

Even if their arguments were meritorious, Mr. Long and Mr. Wyatt should have opted out of the settlement in the hopes of pursuing separate claims against Lowe's, as the Notice Package made very clear they could do. (Platt Decl. Ex. A, Notice Package.) In any event, they cannot show a "reasonable relationship to facts or law that distinguish [their] position from other class members," so their objections should be denied. *See In re Serzone,* 231 F.R.D. at 233.

**D. Little's objection fails to articulate as specific basis for why the settlement is unfair or inadequate, and also suggests he intended to opt out instead of objecting.**

Mr. Little's objection states, "I do not believe that any compensation is due me or any of the other listed plaintiffs" because, in part, he "willingly completed the application process at Lowe's after having read the requirements and requests on the application." (*See* Exhibit 4 to Caddell Decl.) This does not challenge the fairness or adequacy of the Settlement, and fails to factually or legally substantiate his position. *See DeHoyos,* 240 F.R.D. at 293. Moreover, Mr. Little's request not to be compensated will be granted by his failure to file an election form. His objection should therefore be overruled.

## CONCLUSION

The Settlement achieved here is fair, adequate, and achieves real value for the Class in the face of risk and uncertainty. The Parties respectfully request that the Court enter Final Approval. A proposed final approval order, similar in form to the other previously submitted with the Parties' settlement agreement, is attached hereto as **Exhibit 12**.

Respectfully submitted this 23rd day of May, 2016.

s/Mona Lisa Wallace
Mona Lisa Wallace (NC Bar No. 9021)
John Hughes (NC Bar No. 22126)
WALLACE and GRAHAM, P.A.
525 North Main Street
Salisbury NC 28144
Telephone: (704) 633-5244
Facsimile: (704) 633-9434
MWallace@WallaceGraham.com
JHughes@WallaceGraham.com

Leonard Anthony Bennett
Consumer Litigation Associates
12515 Warwick Boulevard, Suite 100
Newport News VA 23606
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
lenbennett@clalegal.com

Luis A. Cabassa
Brandon J. Hill
Wenzel Fenton Cabassa, P.A.
1110 N. Florida Ave., Suite 300
Tampa FL 33602
Telephone: (813) 379-2565
Facsimile: (813) 229-8712
lcabassa@wfclaw.com
bhill@wfclaw.com

Michael A. Caddell
Cynthia B. Chapman
Caddell & Chapman
1331 Lamar St, Suite 1070
Houston TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906
mac@caddellchapman.com
cbc@caddellchapman.com

Matthew Anderson Dooley
Anthony Rocco Pecora
O'Toole McLaughlin Dooley & Pecora Co. LPA
5455 Detroit Road
Sheffield Village OH 44054
Telephone: (440) 930-4001
Facsimile: (440) 934-7208
mdooley@omdplaw.com
apecora@omdplaw.com

Brett E. Dressler
Sellers, Ayers, Dortch & Lyons, PA
301 S. McDowell, Suite 410
Charlotte NC 28277
Telephone: (704) 377-5050
Facsimile: (704) 339-0172
bdressler@sellersayers.com

Ian B Lyngklip
Lyngklip & Associates Consumer Law Center, PLC
24500 Northwestern Highway, Ste. 206
Southfield MI 48075
Telephone: (248) 208-8864
Facsimile: (248) 208-9073
Ian@MichiganConsumerLaw.com
*Attorneys for Plaintiffs*

**Exhibits:**

1. Declaration of Steve Platt, ALCS
   a. Platt Dec. Ex. A – Notice package
   b. Platt Dec. Ex. B – opt-out list (valid)
   c. Platt Dec. Ex. C – opt-out list (invalid)
2. Declaration of Michael Caddell
   a. Caddell Dec. Ex. 1 – Hamlett objection
   b. Caddell Dec. Ex. 2 – Campos objection
   c. Caddell Dec. Ex. 3 – Weygint objection
   d. Caddell Dec. Ex. 4 – Little objection
3. Declaration of Brandon J. Hill
4. Declaration of John Hughes
5. Declaration of Matthew A. Dooley
6. Declaration of Brett Dressler
7. Declaration of Ian Lyngklip
8. Declaration of Leonard Bennett
9. Gift card exchange information.
10. Cardpool website page
11. Coinstar information.
12. Proposed Final Approval Order

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case:

Respectfully submitted,
WALLACE and GRAHAM, P.A.
Attorneys for Plaintiffs

s/Mona Lisa Wallace
Mona Lisa Wallace (NC Bar No. 9021)
John Hughes (NC Bar No. 22126)
525 North Main Street
Salisbury NC 28144
Telephone: (704)633-5244
Facsimile: (704)633-9434
mwallace@wallacegraham.com
jhughes@wallacegraham.com