IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| JASON DAVID BROWN, et al., on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>LOWE'S COMPANIES, INC., *et al.*<br><br>Defendants. | CASE NO. 5:13-cv-00079-RLV |

**Defendant First Advantage Background Services Corp.'s
Brief in Opposition to Plaintiffs' Motion to Strike
Defendant's Privilege Log**

Nearly three months after receiving Defendant First Advantage's privilege log—and without requesting additional information regarding the entries it contains—Plaintiffs ask this Court to strike First Advantage's privilege log as "untimely" and declare the entries insufficient to support the privileges asserted. Rather than citing a *single* binding case to support their position, Plaintiffs rely on other courts' rules to persuade this Court to not only impose a newly-created deadline and standard for privilege log descriptions, but also to impose the severe sanction of privilege and work product waiver because First Advantage failed to comply with a rule that does not exist. In so doing, Plaintiffs take liberties with the facts and rely upon inapplicable case law.

Plaintiffs' motion should be denied.

# BACKGROUND

Plaintiffs' motion omits several important facts regarding the history of this case as it pertains to the privilege log.[1] Most glaringly, Plaintiffs completely ignore the 11-month stay of all proceedings, including discovery, in this case. Additionally, Plaintiffs' motion discounts the voluminous nature of their discovery requests and the timing of First Advantage's responsive document productions.

First Advantage timely served its initial discovery responses on January 30, 2015. Less than a month later, on February 20, 2015, the Court entered the first of six stay orders, allowing the parties to pursue and continue settlement negotiations (which ultimately resulted in Plaintiffs' settlement with Lowe's). These orders stayed all proceedings, *including all discovery,* as follows:

| Date | Description | Docket No. |
| --- | --- | --- |
| January 30, 2015 | Written discovery objections and responses served by First Advantage | n/a |
| February 20, 2015 | Order Granting Stay of Proceedings Pending Mediation until April 30, 2015 | 63 |
| May 1, 2015 | Order Granting Extension of Stay Pending Mediation until June 1, 2015 | 79 |
| June 1, 2015 | Order Granting Extension of Stay Pending Mediation until July 1, 2015 | 86 |
| June 30, 2015 | Order Granting Extension of Stay Pending Mediation until August 1, 2015 | 88 |
| August 2, 2015 | Order Granting Extension of Stay Pending Mediation until September 15, 2015 | 90 |
| September 16, 2015 | Order Granting Extension of Stay Pending Mediation until December 31, 2015 | 93 |
| January 1, 2016 | Proceedings Resume | n/a |

Despite mediation, Plaintiffs and First Advantage ultimately did not reach a settlement. Thus, after proceedings resumed in January 2016, First Advantage began identifying documents responsive to Plaintiffs' requests for production. Declaration of Henry R. Chalmers ("Chalmers Decl.") ¶ 5 (attached hereto as Exhibit 1). First Advantage then made rolling document productions,

---

[1] A more detailed analysis of the instant discovery dispute is set forth in First Advantage's brief in opposition to Plaintiffs' motion to compel, filed contemporaneously herewith.

delivering them to Plaintiffs shortly after review. *Id.* In total, First Advantage produced more than 7,400 documents containing over 130,000 pages between April 6, 2016, and August 8, 2016. *Id.* at ¶ 6. And First Advantage expended well over $100,000 just to process and review the documents and prepare the privilege log at issue in this motion. *Id.* at ¶ 7.

During this time, Plaintiffs inquired about First Advantage's privilege log only sparingly. First, in March 2016, Plaintiffs' counsel asked about the status of First Advantage's privilege log, and First Advantage assured Plaintiffs' counsel that it would provide one, but there was no discussion or agreement as to the timing. *Id.* at ¶ 8. Then, on May 2, 2016, during a discussion about the extension of certain deadlines, Plaintiffs' counsel asked about the status of First Advantage's privilege log and announced their opinion that it was late. *Id.* at ¶ 9. First Advantage advised Plaintiffs' counsel that they were incorrect, and that the privilege log was not late. *Id.* at ¶ 10. Plaintiffs' counsel proposed that First Advantage file a motion requesting leave to serve the log out of time and offered to consent to the motion. *Id.* at ¶ 11 & Exhibit A thereto. First Advantage declined to file such an unnecessary motion and instead timely served its log later that same day. *Id.* at ¶¶ 11-12. Phase I discovery is currently set to close on October 14, 2016. [*See* Doc. #144]

The privilege log provided on May 2, 2016, is attached to Plaintiffs' motion at Exhibit 2. As is customary practice in complex litigation with voluminous documents, the privilege log contains the following categories: a document number, File Date, File Type, Author, From, To, CC, (if available) and Description/Nature of Privilege. The File Date, File Type, Author, From, To, and CC fields contain information extracted from various computer-generated metadata fields to the extent such information was present in the metadata. The Description/Nature of Privilege field describes the nature of the privilege claimed and provides non-privileged information regarding the docu-

ment's contents.[2]

Since receiving the privilege log on May 2, 2016, Plaintiffs have not complained about its specific entries, asked for supplemental information, or sought to meet and confer over any of the specific entries in the privilege log. Chalmers Decl. ¶ 14.

## ARGUMENT AND AUTHORITY

### I. First Advantage's privilege log was timely.

Plaintiffs' complaint regarding the timing of the privilege log's production is unfounded. First Advantage provided the log timely and consistent with local practice in this Court. Plaintiffs cite no authority to support the severe sanction of privilege and work product waiver under these circumstances, and they admittedly are not prejudiced in any way by the timing of First Advantage's privilege log.

#### A. First Advantage's privilege log was not 15 months late.

Initially, Plaintiffs' characterization of the timing of First Advantage's privilege log is misleading. As explained above, First Advantage served its responses to Plaintiffs' Requests for Production on January 30, 2015. On February 20, 2015, less than one month later, *all proceedings* were stayed, including discovery. That stay was extended on numerous occasions by consent of the parties and with approval of this Court, and proceedings did not resume until January 1, 2016. Plaintiffs' claim—in bold italics, no less—that 15 months passed before First advantage provided its privilege log (Pls.' Br. at 4) completely ignores the almost year-long stay of discovery during that 15-month period.

Plaintiffs also discount the voluminous nature of their discovery requests, as well as the tim-

---

[2] To the extent a particular document did not possess all of the provided metadata—such as scanned hard-copy documents or some freestanding eDocs (*i.e.* the limited documents compiled in Exhibit 3 to Plaintiffs' motion)—the Description/Nature of the Privilege field contains the necessary information to inform Plaintiffs of the basis for the privilege.

4
Case 5:13-cv-00079-RLV-DSC   Document 160   Filed 08/15/16   Page 4 of 15

ing of First Advantage's document productions. Because of the enormous number of documents First Advantage was required to identify, collect, and review, as well as the numerous orders staying the proceedings, First Advantage made its first production in a rolling effort on April 6, 2016. In all, First Advantage produced over 130,000 pages of documents on or about April 6, April 15, April 20, April 21, April 22, May 2, July 22, and August 8.[3] Notwithstanding the enormous effort required to make these productions, First Advantage served its privilege log on May 2, 2016, less than one month after its initial production.

### B. First Advantage's privilege log was timely.

In addition to exaggerating the alleged delay of First Advantage's privilege log, Plaintiffs fail to cite even one case in this jurisdiction requiring privilege logs to be produced at the time of written discovery responses and objections. In fact, two of the cases upon which Plaintiffs rely actually note that Rule 26's privilege log mandate does not correlate with the deadline for responding to discovery requests under Rule 34. *Burlington N. & Santa Fe Ry. Co. v. United States District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("[W]e also reject a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit."); *Wellin v. Wellin*, 2015 WL 9850704, at *2 (D.S.C. Dec. 4, 2015) ("Rule 26 is silent with regard to the time within which the information must be provided.")[4]

Cases in this district likewise suggest a more reasonable approach for the timing of privilege logs. In *Penley v. McDowell County Board of Education*, 2015 WL 7721244 (W.D.N.C. Nov. 30, 2015), Magistrate Judge Howell suggested that it was "better practice" to produce a privilege log with each

---

[3] First Advantage also produced 281 pages of documents specific to the individual Plaintiffs on January 30, 2015.
[4] And, significantly, in *Wellin*, Plaintiffs sought a ruling that privilege had been waived for only *four documents*. 2015 WL 9850704, at *1. That is a far cry from the instant case in which Plaintiffs demand that the Court order the waiver of privilege as to *all* documents listed on First Advantage's lengthy log.

5

round of documents produced, but held no order compelling production was necessary because a comprehensive log was produced the day before the motion hearing. *Id.* at *2; *see also Synovus Bank v. Karp*, 2013 WL 3927604, at *3 (W.D.N.C. July 29, 2013) (ordering a privilege log be produced, but no privilege waiver, when one had not been produced *even at the time of the motion to compel hearing*). The Eastern District has a similar rule. In *Spilker v. Medtronic, Inc.*, 2015 WL 1643258 (E.D.N.C. April 13, 2015), the production of a privilege log at the end of a rolling production was found reasonable, and the court noted that, if aggrieved by the timing of the log, the receiving party had unreasonably delayed by waiting several months to bring the issue to the Court's attention. *Id.* at *5-6.

In fact, the primary case upon which Plaintiffs rely, *Mezu v. Morgan State Univ.*, 269 F.R.D. 565 (D. Md. 2010), does not actually stand for the proposition that the privilege log is due on the same date as the discovery responses. Rather, the court noted that a privilege log "must accompany a written response to a Rule 34 document production request," *see id.* at 577, and then cited multiple cases in which privilege logs were either not provided at all, *see Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 2715164, at *4 (N.D. W.Va. Sept. 22, 2006) and *Ruran v. Beth El Temple of W. Hartford Inc.*, 226 F.R.D. 165, 168-69 (D. Conn. 2005), or were provided only in response to a motion to compel, *see Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 20-21 (D.D.C. 2004). In *none* of these cases did a court determine that privilege had been waived, nor was any particular rule discussed as to the timing of the log. And *Mezu* is likewise distinguishable because, there, no privilege log was produced at all.

Where, as here, voluminous documents were reviewed and produced on a rolling basis, it is common practice for privilege logs to be produced either at intervals throughout the production or at the conclusion of document production. The simple practicalities involved in such document productions necessitate this: when reviewing and producing hundreds of thousands of pages of documents, it is simply not reasonable—and perhaps not even realistically possible—for the responding

6

party to identify all of the documents that may be privileged in a future production within the limited time (approximately 30 days) it has to object and respond to written discovery requests.

First Advantage provided its first production on April 6, 2016, and its privilege log on May 2, 2016. First Advantage produced over 130,000 pages of documents, and it reviewed *significantly* more than that in order to determine which were responsive and to identify privileged communications or work product. Plaintiffs' complaints about the timing of the privilege log are simply unreasonable and unsupported by this Court's precedent.

### C. The sever sanction of waiver is wholly inappropriate in this case.

Plaintiffs' motion then goes even further afield, asking this Court to order waiver and sanctions under Rule 37. In support, Plaintiffs cite primarily cases outside this jurisdiction, in most of which the court declined to find waiver of the attorney-client or work-product privileges. *See Johnson v. Ford Motor Company*, 309 F.R.D. 226, 235 (S.D. W. Va. 2015) (refusing to find the "extreme sanction of waiver" noting "[g]iven the sanctity of the attorney-client privilege and the seriousness of privilege waiver, courts generally find waiver only in cases involving unjustified delay, inexcusable conduct and bad faith"); *Wellin*, 2015 WL 9850704, at *2 (holding no waiver and noting that (i) Rule 26 is silent with regard to the timing of privilege log, (ii) the volume of documents Defendants needed to review to prepare the privilege log was extensive, and (iii) the lack of prejudice to Plaintiff).

In the lone case cited from this jurisdiction, *Anderson v. Caldwell County Sherriff's Office*, 2011 WL 2414140 (W.D.N.C. June 10, 2011), Judge Howell refused to find a waiver of privilege even though Plaintiffs waited almost a year to provide a privilege log and did so only in response to the motion to compel. *Id.* at *2. *See also Hodges v. First Am. Bank and Trust Co.*, 2012 WL 1598063, at *1 (W.D.N.C. May 7, 2012) (rejecting the magistrate judge's recommendation and denying the motion to compel involving, in part, failure to produce a privilege log, because compliance was achieved by the time of the Order); *Rushing v. Time Warner, Inc.*, 2007 WL 430207, at *5 (W.D.N.C. Feb. 2, 2007)

(ordering a privilege log be produced, but no waiver or sanctions).

Plaintiffs also fail to identify any prejudice suffered as a result of the timing of the privilege log. Significantly, prior to filing its motion, Plaintiffs did not complain about the specific content of First Advantage's privilege log. Without reference to any cognizable harm or prejudice, Plaintiffs assert only that the timing "interfer[ed] with Plaintiffs' development of their case." (Pls.' Br. at 5.) Nonsense. In fact, further underscoring the meritless nature of their motion is the fact that Plaintiffs *offered to consent* to First Advantage filing a motion to serve the privilege log out of time, thereby conceding they suffered no harm from any alleged delay in the log's production. Notwithstanding that the motion Plaintiffs proposed was unnecessary under the rules, their proffered agreement to consent evidences the real motive behind this motion: not any prejudice but, rather, pure gamesmanship designed to cast First Advantage in a poor light before this Court. Such efforts should be denounced.

## II. First Advantage's privilege log provides sufficient information regarding the privileges asserted.

Plaintiffs' claim that "every entry" in First Advantage's privilege log is insufficient (Pls.' Br. at 5) is nothing more than additional posturing. Without following requirements to meet and confer, Plaintiffs instead ask this Court to (i) apply a standard that has no basis in local precedent and (ii) award sanctions that are unsupported by law. First Advantage's privilege log satisfies this Court's requirements for claims of privilege, and Plaintiffs' motion should be denied.

### A. First Advantage's log entries are adequate under the law.

The Fourth Circuit requires that when claiming attorney-client privilege "a party must satisfy procedural and substantive criteria." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501(4th Cir. 2011. When claiming the work-product privilege, "the party must demonstrate that the documents in question were created in preparation for litigation." *Id.* at 502. Plaintiffs assert no substantive chal-

lenge to First Advantage's claims of privilege and work-product, but, rather, claim only that the privilege log is procedurally deficient.

To invoke privilege, a party must "expressly make the claim" and "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id.* (citing Fed. R. Civ. P. 26(a)(5)(A)). In *Interbake Foods*, the Fourth Circuit interpreted the standard as requiring "a privilege log in which it identified the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted." *Id.*; *see also Rushing*, 2007 WL 430207, at *5 (requiring production of "a privilege log [that]. . . identif[ies] each document by topic, date, author, and recipient, and stating the alleged basis for privilege); *Vaughan v. Celanese Americas Corp.*, 2006 WL 3592538, at *3 (W.D.N.C. Dec. 11, 2006) (privilege is properly asserted if a log identifies "the date, the authors and recipients (including "cc" recipients), a description of the document, and the privilege asserted").

First Advantage's log descriptions meet the *Interbake Foods* standard. The log provides standard information, such as Date, Type, Author, To, From, CC, and the Description/Nature of the Privilege.[5] *Rohlik v. I-Flow Corp.*, 2012 WL 1596732, at *4 (E.D.N.C. May 7, 2012) ("list[ing]: the Bates number, type of document, date, privilege asserted, summary, author, and recipient" sufficiently established that the documents were properly withheld); *Kelly v. United States*, 281 F.R.D. 270, 277 (E.D.N.C. 2012) (finding a log that "does more than simply state that a document is confidential work product; [and] instead, . . . provides a description of the document, the author, addressee, type of document, and the specific reasons privilege is claimed" is adequate). And, again, the File Date, File Type, Author, From, To, and CC fields contain information extracted (when available) from various computer-generated metadata fields.

---

[5] To the extent Plaintiffs have questions about whether certain individuals listed on the privilege log are attorneys for Defendant, that issue could be cleared up by compliance with the required meet and confer process. *See* Section II(B), below.

Rather than follow the standard previously applied in this Court, Plaintiffs cite extensively to *Johnson v. Ford Motor Co.*, 309 F.R.D. 226 (S.D.W. Va. 2015), a non-binding case outside this Court that does not even support Plaintiffs' position. *Johnson* did not "reject[] descriptions of documents that were far more detailed than those given . . . here." Pls.' Br. at 7. Rather, *Johnson* required the defendants to provide additional information because their descriptions "fail[ed] to provide any concrete facts about the nature or subject matter of the withheld documents, which would allow an individual reviewing the log to assess the appropriateness of the privilege claim." 309 F.R.D. at 234. In fact, the *Johnson* log had only 2 descriptions, which were repeated for the entire log. *Id.* It is important to note, as well, that, unlike First Advantage's log here, the log in *Johnson* contained only 132 entries, making further refinement relatively easy and "proportional to the needs of the case." *Id.* at 235; Fed. R. Civ. P. 26(b)(1). *Johnson* is therefore inapplicable.

Here, First Advantage's descriptions are "sufficiently specific to allow Plaintiff[s] to determine the basis for the privilege asserted with respect to each document." *Spilker*, 2015 WL 1643258, at *6. In addition to the To, From, CC, and Author information provided (when available)—all of which allow Plaintiffs to identify potential attorney communications and work product—the log also contains individualized information about the subject matter to which the attorney-client communication or work product relate. For example, among others, the log contains the following descriptors:

- "providing legal advice regarding consumer dispute,"
- "providing legal advice regarding dispute process procedures,"
- "providing legal advice regarding response to audit results,"
- "providing legal advice regarding 613 letter drafting,"
- "providing legal advice regarding regulatory compliance,"
- "providing legal advice regarding 611 re investigation process,"

- "providing legal advice regarding training for handling consumer disputes,"
- "providing legal advice regarding consumer litigation,"
- "seeking and providing legal advice regarding background check procedure," and
- "providing legal advice regarding FCRA reporting guidelines."

These sample log descriptions are very similar to those provided in *Vaughn v. Celanese Americas Corp.*, which this Court (Horn, II, M.J.) found sufficient. *See* 2006 WL 3592538, at *3-4. They provide details about privileged communications, *see, e.g., Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc.*, 63 F. Supp. 3d 558, 569 (E.D.N.C. 2014), and documents created for the purpose of representation in pending litigation, *see, e.g., Rohlik*, 2012 WL 1596732, at *4. As *Interbake Foods* and other cases readily show, First Advantage's descriptions are sufficient, and Plaintiffs' motion should be denied.

### B. Plaintiffs failed to meet and confer regarding First Advantage's privilege log entries.

The Court should also deny Plaintiffs' motion because they (i) failed to meet and confer with First Advantage regarding their alleged grievances with the contents of the privilege log before filing their motion to strike, as required under Local Civil Rule 7.1(B), and (ii) the motion has no consultation certification, as required by Federal Rule of Civil Procedure 37(a)(1). Not once since May 2, 2016, have Plaintiffs complained about the specific log entries, asked for additional information to evaluate specific assertions of privilege, or sought to meet and confer with First Advantage regarding the substantive content of the privilege log. Chalmers Decl. ¶ 14. Accordingly, Plaintiffs' motion is premature and should be denied. *See Miller v. Wal-Mart*, 2014 WL 4545687, at *1 (W.D.N.C. Sept. 12, 2014) (denying motion to compel due to failure to comply with Rule 37(a)(1) and Local Rule 7.1(b)); *Buchanan v. Cochran*, 2011 WL 810037, at *2 (W.D.N.C. Mar. 2, 2011) (same).

### C. Plaintiffs' request for sanctions is unsupported by law.

In conclusory fashion, Plaintiffs also ask the Court to impose the extreme penalty of waiver

of the attorney-client and work-product privileges and sanctions under Rule 37. The Court should deny this request for two reasons.

First, Rule 37(b)(2) sanctions are inappropriate because First Advantage has violated no discovery-related court order, which is a precursor to the imposition of sanctions under Rule 37(b)(2). *See Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 208 (1958) ("For purposes of subdivision (b)(2) of Rule 37, we think that a party 'refuses to obey' simply by failing to comply with an order." ); *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985) ("Fed. R. Civ. P. 37(b)(2)(B) provides for the preclusion of evidence by a party failing to provide or permit discovery pursuant to an order to provide or permit discovery."). First Advantage has not been ordered by this Court to produce a privilege log—rather, First Advantage produced its log voluntarily almost three months before Plaintiffs filed their motion. Similarly, First Advantage has not failed to comply with an order to supplement its log descriptions. Instead, First Advantage has complied with its discovery obligations by timely responding to discovery requests, producing well over one hundred thousand pages of documents, and providing a comprehensive privilege log—all without the need for any intervention by the Court. Thus, the requirements for sanctions under Rule 37 are entirely absent.

Second, even if this matter were procedurally ripe for sanctions—which it most decidedly is not—the facts do not warrant such a punitive measure. The Fourth Circuit considers four factors when determining if sanctions should be imposed under this rule: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the party's noncompliance caused the adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) whether less drastic sanctions would have been effective." *Southern States Rack & Fixture, Inc. v. Sherwin Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003); *Beal v. Air & Liquid Sys. Corp.*, 2014 WL 1092080, at *2 (W.D.N.C. Mar. 18, 2014). *None* of these factors is present here. The record does not support a finding of bad

faith, prejudice, nor the need for deterrence. (Even if sanctions were appropriate, less severe options would be available, such as an order directing the parties to meet and confer or requiring First Advantage to provide additional information.) Because it fails to meet even one of the criteria established by the Fourth Circuit, the Court should deny Plaintiffs' request that First Advantage be sanctioned and its privileges waived. *See Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) (finding that the record did not support prejudice).

## CONCLUSION

First Advantage's detailed privilege log, produced at great expense to First Advantage, complies with the applicable requirements and was not served untimely. And by offering to consent to an unnecessary motion to serve the log "out of time," Plaintiffs concede that they have suffered no prejudice, having received the log more than five months before the currently-scheduled close of Phase I discovery. The lack of merit to Plaintiffs' motion is further compounded by fatal procedural deficiencies and the lack of supporting authority in this District. For any or all of the foregoing reasons, First Advantage requests that this Court deny Plaintiffs' motion to strike its privilege log and Plaintiffs' request for the extraordinary relief of waiver.

This 15th day of August, 2016.

/s/ Pearlynn G. Houck
Robert W. Fuller
N.C. Bar No. 10887
rfuller@robinsonbradshaw.com
Pearlynn G. Houck
N.C. Bar No. 36364
phouck@robinsonbradshaw.com

**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: 704-377-2536
Facsimile: 704-378-4000

13

Admitted *Pro Hac Vice:*

Henry R. Chalmers
Georgia Bar No. 118715
henry.chalmers@agg.com

C. Knox Withers
Georgia Bar No. 142482
knox.withers@agg.com

Edward P. Cadagin
Georgia Bar No. 647699
edward.cadagin@agg.com

**ARNALL GOLDEN GREGORY LLP**
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363-1031
Telephone: 404-873-8500
Facsimile: 404-873-8501

Jeffrey S. Jacobovitz
D.C. Bar No. 346569
jeffrey.jacobovitz@agg.com
**ARNALL GOLDEN GREGORY LLP**
1775 Pennsylvania Avenue, N.W., Suite 1000
Washington, D.C. 20006
Telephone: 202-677-4030
Facsimile: 202-677-403

# CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such to the following counsel of record:

Anthony Rocco Pecora
Matthew Anderson Dooley O'Toole
McLaughlin Dooley & Pecora Co. LPA
5455 Detroit Road
Sheffield Village, OH 44054
apecora@omdplaw.com
dooley@omdplaw.com

Michael A. Caddell
Cynthia B. Chapman
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77101-3027
mac@caddellchapman.com
cbc@caddellchapman.com

Craig C. Marchiando
Leonard Anthony Bennett
Consumer Litigation Associates
12515 Warwick Boulevard Suite 100
Newport News, VA 23606
craig@clalegal.com
lenbennett@clalegal.com

Brett E. Dressler
Sellers, Hinshaw, Ayers, Dortch & Lyons, PA
301 S. McDowell, Suite 410
Charlotte, NC 28277
bdressler@sellershinshaw.com

Brandon J. Hill
Wenzel Fenton Cabassa, P.A.
1110 N. Florida Ave., Suite 300
Tampa, FL 33602
bhill@wfclaw.com

Brent Alan Rosser
Hunton & Williams LLP
101 South Tryon Street Suite 3500
Charlotte, NC 28280
brosser@hunton.com

Kevin James White
Robert T. Quackenboss
Hunton & Williams LLP
2200 Pennsylvania Avenue, N.W. Washington, DC 20037
khwhite@hunton.com
rquackenboss@hunton.com

Ian B. Lyngklip
Lyngklip & Associates Consumer Law Center
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
Ian@MichiganConsumerLaw.com

Mona Lisa Wallace
Daniel Ray Francis
John S. Hughes
Wallace & Graham, PA
525 N. Main St.
Salisbury, NC 28144
mwallace@wallacegraham.com
dfrancis@wallacegraham.com
dfrancis@wallacegraham.com

Luis A. Cabassa
Wenzel Fenton Cabassa, P.A.
1110 N. Florida Ave., Suite 300
Tampa, FL 33602
lcabassa@wfclaw.com

    /s/ Pearlynn G. Houck
    Pearlynn G. Houck
    N.C. Bar No. 36364