# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

| | | |
|---|---|---|
| JASON DAVID BROWN, LASZLO BOZSO, and MERIS DUDZIC, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) ) | No. 5:13-CV-00079-RLV-DSC (consolidated case number) |
| LOWE'S COMPANIES, INC., and LEXISNEXIS SCREENING SOLUTIONS, INC. | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| APRIL INGRAM-FLEMING, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) ) | No. 5:15-CV-00018-RLV-DSC |
| | ) | |
| LOWE'S HOME CENTERS, LLC, d/b/a LOWE'S, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CERTIFICATION OF A SETTLEMENT CLASS

Plaintiffs Jason Brown, Laszlo Bozso, and April Ingram-Fleming ("Plaintiffs"), pursuant to Rule 23 of the Federal Rules of Civil Procedure and LCvR 7.1, hereby respectfully submit their memorandum of law in support of their motion for final approval of settlement of the Pre-Adverse Action Settlement Class and certification of a settlement class, with defendant Lowe's Companies, Inc. ("Lowe's") (collectively, referred to as the "Parties").

# I.  INTRODUCTION

Plaintiffs seek final approval of the settlement (the "Settlement") of the Pre-Adverse Action Settlement Class, which the Court preliminarily approved on July 15, 2016. (Doc. 139) (the "Preliminary Approval Order"). The Settlement resolves all claims brought against Lowe's under 15 U.S.C. § 1681b(b)(3) of the Fair Credit Reporting Act ("FCRA"), which claims are referred to as the "Pre-Adverse Action Claim." The Court has already finally approved settlement of the Disclosure Claims against Lowe's. (Doc. 137.) If the Court finally approves the Settlement and enters final judgment as to the Pre-Adverse Action Claim, this will dispose of all claims asserted against Lowe's in this case.

In finally approving a settlement, the Court must determine whether a class action settlement comports with Rule 23(e)(2) of the Federal Rules of Civil Procedure, which permits a Court to approve a settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). The Settlement is abundantly fair, reasonable, and adequate, and the Court can and should approve it. As the Court is well aware, the Settlement resulted from more than two years of contentious litigation, and was facilitated by an experienced mediator. If the Parties had not settled, Plaintiffs faced the possibility of the Court granting Lowe's motion to dismiss the Pre-Adverse Action Claims, which would have resulted in no relief for the Pre-Adverse Action Class Members. Conversely, had the Plaintiffs successfully proved a willful violation of the FCRA, Lowe's faced the possibility of a judgment awarding statutory damages between $100 and $1,000 per violation. With the estimated size of the class, such a judgment could have exceeded tens of millions of dollars.

Given the risks and uncertainty faced by both parties, the Settlement is an excellent resolution for the Pre-Adverse Action Class Members. The estimated size of the class as of the

filing of this motion is 37,627. Each Pre-Adverse Action Class Member will receive $60 cash minus the pro-rata share of any attorneys' fees, costs, and service awards to class representatives awarded by the Court. In exchange, class members provide only a narrow release of claims under 15 U.S.C. § 1681b(b)(3) and its state equivalents. Each Pre-Adverse Action Class Member is eligible for this award without having to prove any damages individually. The fairness and adequacy of the Settlement is further demonstrated by the complete lack of any timely-filed objection to the Settlement[1], and the minuscule number of opt-outs. Only 75 individuals have opted out of the class, constituting approximately 0.19 % of Pre-Adverse Action Class Members.

Given the complexity of this litigation, the significant risks and uncertainties that the parties would face if litigation of the Pre-Adverse Action Claims were to proceed, and the real benefits conferred on the Class Members, this Court can and should finally approve the Settlement.

## II.  RELEVANT CASE BACKGROUND[2]

The Settlement is the second settlement in this case between the Parties, with the Court having already finally approved the Settlement of the Disclosure Class. (*See* Doc. 137.)

On May 16, 2013, Plaintiffs Jason Brown and Laszlo Bozso filed their original complaint in the lawsuit styled *Brown, et al. v. Lowe's Companies, Inc. et al.,* Civil Action No. 5:13-CV-

---

[1] One individual named Bicentanul Long objected to the settlement on October 14, four days after the deadline. (Doc. 169; 139 ¶ 8 (Preliminary Approval Order setting out October 10 deadline.) As addressed below, his objection is without merit.

[2] The case background, nature of Plaintiffs' claims, and settlement structure are detailed in the joint motion for preliminary approval of the proposed class settlement (Doc. 124) and the supporting memorandum (Doc. 125), as well as in the Court's Preliminary Approval Order (Doc. 139). Plaintiffs adopt and incorporate by reference those filings.

00079-RLV-DCK, W.D.N.C., Statesville Division (Doc. 1).[3] The complaint named as Defendants Lowe's and LexisNexis Screening Solutions, Inc., now known as First Advantage Background Services Corp. ("First Advantage"). The Plaintiffs alleged that Defendants violated various provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., in the hiring process. The complaint alleged, *inter alia,* that Lowe's willfully failed to comply with the requirements in 15 U.S.C. § 1681b(b)(3)(A) when using a consumer report about them and other similarly situated individuals for employment purposes. (*See* Complaint Count 1, ¶¶ 86–90).

The Complaint alleged that Lowe's contracted with LexisNexis, who provided consumer reports concerning applicants who sought employment with Lowe's. Plaintiffs alleged that information provided by LexisNexis was relied upon by Lowe's in rendering employment decisions. The Plaintiffs each alleged that he or she sought employment with Lowe's between 2008 and 2011 but was not hired. Mr. Brown applied for employment at Lowe's in 2011, Complaint ¶¶ 25–28, as did Mr. Boszo, *id.* ¶¶ 35–40. Each alleged that after reports and background checks, Lowe's did not provide a timely copy of the materials reviewed or a summary of the information. (*Id.* ¶¶ 27–30, ¶¶ 42–48.)

Plaintiffs filed a motion for class certification on July 8, 2013 (Doc. 28). Lowe's filed a motion to dismiss on July 11, 2013 (Doc. 31). LexisNexis filed a motion to dismiss on July 12, 2013. (Doc. 33). The parties on July 16, 2013 filed a joint motion requesting that the Court stay briefing and ruling on the class certification so as to allow for resolution of the pending motions to dismiss as well as class-related discovery. (Doc. 37). The Court granted the stay. (Doc. 38). Plaintiffs filed briefs opposing the motions to dismiss on August 19, 2013 and Defendants replied. (Docs. 41–44). On September 30, 2014, the Court issued an 18-page Memorandum and

---

[3] Another plaintiff in the case, Meris Dudzic, is not a party to the Settlement referenced in this motion.

Order denying the motions to dismiss. (Doc. 46). An Amended Complaint was filed on October 7, 2014, again asserting Lowe's violated 15 U.S.C. § 1681b(b)(3)(A). (Doc. 48). Defendants filed Answers on October 24. (Docs. 50–51). A Scheduling Order was entered on December 8, 2014. (Doc. 53). On January 22, 2015, Plaintiffs Brown and Bozso filed a Second Amended Complaint in which they asserted, *inter alia*, that Lowe's willfully violated 15 U.S.C. § 1681b(b)(2)(A) by failing to comply with disclosure and authorization requirements before procuring a consumer report on them and a class of other people. (Doc. 56.)

In the meantime, on October 9, 2014, Plaintiff April Ingram-Fleming filed her own suit against Lowe's in the Middle District of Florida.[4] Case No. 8:14-cv-2569-SDM-MAP, M.D. Fl. After the filing of a motion for class certification, an Amended Complaint, a motion to dismiss and a motion to transfer, the Court ordered the transfer of the case to this Court where it was consolidated with the existing case brought by the other three Plaintiffs noted above. (*See* M.D. Fl. Order dated Feb. 3, 2015 (ordering transfer) (Doc. 39), and this Court's Order dated February 20, 2015 (consolidating cases) (Doc. 64).)

On February 20, 2015, this Court granted a Joint Motion to Stay Proceedings pending mediation. (Doc. No. 63). This stay was extended by Order dated May 1 (Doc. 79), June 1 (Doc. 86), June 30 (Doc. 88), August 3 (Doc. 90), September 17 (Doc. 93), to allow the parties to engage in additional mediation efforts. In addition, the Defendants filed new motions to dismiss and/or for judgment on the pleadings. (Docs. 77, 81). Lead counsel for the Plaintiffs was appointed pursuant to Order dated May 1, 2015. (Doc. 80).

The parties engaged in a process of exchanging information and negotiating toward a

---

[4] All references to "Lowe's" herein are deemed to include both the Defendant Lowe's Companies, Inc. named in the *Brown* case and "Lowe's Home Centers, LLC, d/b/a Lowe's" named in the *Ingram-Fleming* case.

resolution, followed by a protracted arms'-length mediation and negotiation process with the mediator Hunter R. Hughes including an initial in-person mediation session on May 27, 2015 and at least a dozen more telephonic or written efforts by Mr. Hughes and subsequent direct communications and exchanges between the parties. (*See* status reports, *e.g.* at Docs. 87, 89, 92). Lowe's and Plaintiffs reached an agreement in principle to settle the Disclosure Class on July 29, 2015, which was then memorialized into a Memorandum of Understanding to resolve the Plaintiffs' claims under 15 U.S.C. § 1681b(b)(2) (the "Disclosure Claims"). (*See id.*) The Court entered an order of final approval of the settlement of the Disclosure Claims on June 21, 2016. (Doc. 137). After continued negotiations and discussions that began during the mediation, the Parties agreed to settle the Pre-Adverse Action Claims. (*See* Ex. 2, Declaration of Michael A. Caddell ("Caddell Decl.") ¶ 37.) The Court granted the Parties' joint motion for preliminary approval of that settlement on July 15, 2016. (Doc. 139.) In that Order, the Court appointed American Legal Claim Services ("ALCS") as the Claims Administrator in charge of administering the Settlement. (*Id.*)

## III. TERMS AND ADMINISTRATION OF THE SETTLEMENT

### A. Preliminary Approval of Pre-Adverse Action Settlement Class

The Court preliminarily approved the following "Pre-Adverse Action Settlement Class," under 15 U.S.C. § 1681b(b)(3), with the constituent class members known as "Pre-Adverse Action Class Members," as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who submitted an employment application to Lowe's, (b) who were the subject of a consumer report which was used by Lowe's or its agent to make an employment decision regarding such person between May 16, 2011 and February 3, 2015, (c) for whom that decision was either a rejection or a delay of the employment, and (d) who were not provided a copy of that consumer report and/or the mandatory disclosures required in 15 U.S.C. § 1681b(b)(3) before that employment decision was adjudicated.

6

(Doc. 139 ¶ 2.) Specifically excluded from the Class were: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; and (c) all persons who have previously executed and delivered to Lowe's releases of all their claims or all of their Pre-Adverse Action Settlement Class claims. (*Id.*) As of the date of the filing of this motion, the approximate number of Pre-Adverse Action Class Members is 37,627. (Ex. 1, Declaration of Steve Platt ("Platt Decl.") at ¶ 3.)[5]

In the Preliminary Approval Order, the Court designated Plaintiffs Jason Brown, Laszlo Bozso, and April Ingram-Fleming as the Class Representatives, and preliminarily appointed as Class Counsel, Caddell & Chapman, Consumer Litigation Associates, P.C., O'Toole, McLaughlin, Dooley & Pecora, Co., LPA, Lyngklip & Associates Consumer Law Center, PLC, Sellers, Hinshaw, Ayers, Dortch & Lyons, P.A., Wenzel, Fenton, Cabassa, P.A., and Wallace & Graham, P.A. (Doc. 139, ¶ 3)

### B. Consideration Provided Under the Settlement

Under the Settlement, each Pre-Adverse Action Class Member will receive a gross individual cash payment (the "Gross Individual Settlement Award") of $60. (Doc. 125-1 § 7.1.1.) Before determining the final amount of each cash payment, the Claims Administrator will deduct

---

[5] Each of the numbers referenced in this Motion as to class size represent the best estimate to date. However, timely filed requests for exclusion continue to arrive, and ALCS continues to process them. The Parties will supplement these figures as necessary prior to the Final Fairness Hearing.

from the Maximum Settlement Amount[6] all attorneys' fees, costs, and service awards awarded by the Court. (*Id.*) Then, as provided for in § 7.1.2 and 8.3 of the Settlement Agreement, any uncashed settlement checks issued to Class Members will be applied to Lowe's's costs of notice and administration. (Doc. 125 §§ 7.1.1, 8.3.)

## C. Notice and Settlement Administration

In accordance with the Preliminary Approval Order, ALCS has acted as the Claims Administrator in charge of administering the terms of the Settlement Agreement and notification to the Pre-Adverse Action Class Members. (*See* Doc. 139 ¶ 6; Platt Decl. ¶ 2.). ALCS has been responsible for overseeing the dissemination of notice to the class, establishing and maintaining a Settlement Website, and establishing and maintaining a Telephone Assistance Program. (Platt Decl. ¶ 2.)

### 1. ALCS performed its initial data analysis.

After the Court entered the Preliminary Approval Order, Lowe's provided ALCS with a single data file consisting of the names, addresses, and email addresses of Pre-Adverse Action Class Members. (*Id.* ¶ 3.) The data file included 37,627 Class Member names and addresses. (*Id.*) ALCS assigned a unique ID to each Class Member's record. (*Id.*) Pursuant to Section 4.2.3 of the Settlement Agreement and Release, ALCS compared the Pre-Adverse Action Settlement Class list to the Disclosure Settlement Class list and determined that 21,281 individuals were a part of both the Disclosure Settlement Class and the Pre-Adverse Action Settlement Class. (*Id.* ¶

---

[6] The Maximum Settlement Amount is defined in the Settlement Agreement as "the sum of all Gross Individual Settlement Awards awarded under this Settlement Agreement. The 'Maximum Settlement Amount' is 'all inclusive,' including any penalties and damages associated with or related to the alleged Pre-Adverse Action Claim by or of Pre-Adverse Action Class Members; interest, attorneys' fees, costs and expenses as approved by the Court; settlement payments; and taxes, if any (including state and federal income taxes, social security contributions, and unemployment taxes)." (Doc. 125-1 § 1.19.)

4; Doc. 125-1 § 4.2.3.) ALCS determined during the administration of the Disclosure Class Settlement that 1,640 of these 21,281 Class Members were not able to be located. (Platt Decl. ¶ 4.) These 1,640 Class Members who could not be located were removed from the mailing population, leaving the mailing population at 35,987. (*Id.*)

### 2. ALCS sent out Notice Package in accordance with the Preliminary Approval Order.

Pursuant to the Preliminary Approval Order, ALCS mailed the Class Notice and Opt-Out Form, collectively ("Notice Package") via USPS first-class postage prepaid, to the remaining 35,987 Class Members. (*Id.* ¶ 5; Ex. A to Platt Decl., Notice Package; Doc. 139 ¶ 9.)

ALCS processed all mail returned by the USPS. (Platt Decl. ¶ 6.) ALCS took reasonable steps to obtain correct address information of any Class Member for whom the Notice Package was returned. (*Id.*) First, ALCS submitted the Class Member's name and address information to the NCOA database prior to the initial mailing. (*Id.*) Second, after any Notice Package was returned without an updated address provided by the USPS, ALCS submitted the Class Member's name and address to a nationally recognized location service. (*Id.*) For any updated addresses received, ALCS updated the Class Member database and re-mailed the Notice Packages. (*Id.*)

Of the 35,987 Notice Packages initially mailed, 7,354 were returned undeliverable. (*Id.* ¶ 7.) ALCS received an additional 83 that had forwarding addresses, and re-mailed the Notice Packages to the forwarding address. (*Id.*) ALCS used a nationally recognized location service to locate and update the remaining addresses, and by October 10, 2016, it had re-mailed 7,259 Notice Packages. (*Id.*) As of October 10, 2016, ALCS was unable to locate 95 Class Member addresses that were returned as undeliverable, despite using the nationally recognized location service. (*Id.* ¶ 8.) Additionally, the USPS returned 1,497 of the re-mailed Notice Packages as

9

undeliverable as addressed. (*Id.*)

The following is a summary of the noticing associated with this Class, as of the day of this declaration:

- Total number of Class Members: 37,627
- Total number initially mailed: 35,987
- Total number of mailed Notice Packages that were returned and processed, for which no forwarding or updated address was found: 1,592
- Presumed Notice Package delivery rate: 91.4%[7]

(*Id.* ¶ 9.)

### 3. ALCS established and maintains the Settlement website.

Pursuant to the Settlement Agreement, ALCS established and maintained a settlement website to provide notice of the Settlement located at www.LowesFCRASettlement.com. (Platt Decl. ¶ 10; Doc. 125-1 § 4.2.4.) The website contains the full text of the Settlement Agreement, the Mail Notice, the Opt-Out Form, the Preliminary Approval Order, frequently asked questions and the contact information for Class Counsel and the Claims Administrator. (Platt Decl. ¶ 10.)

### 4. ALCS established and maintains a telephone assistance program.

Pursuant to the Settlement Agreement, ALCS established a dedicated toll-free phone number to provide answers to Class Member questions. (*Id.* ¶ 11; Doc. 125-1 § 4.2.5.) The toll-free number provided a voice response unit listing of questions and answers to frequently asked questions and the option to access live agent support. (Platt Decl. ¶ 11.) Live agent support consisted of either English or Spanish speaking agents. (*Id.*) As of October 10, 2016, ALCS has received 323 calls regarding the Settlement, of which 12 chose to speak with a live agent. (*Id.*)

---

[7] ALCS continues to receive and process mail, for which no forwarding address is available. The number of pieces of this type of mail will increase and the presumed delivery rate will be reduced as processing continues.

### 5. ALCS received and processed requests for exclusions.

Under the Preliminary Approval Order, the Pre-Adverse Action Class Members could opt out of the Class by submitting their written request to ALCS so that they were received on or before October 10, 2016. (Doc. 139 ¶ 8.) As of October 10, 2016, ALCS had received a total of 75 valid timely Opt-Out requests. (Platt Decl. ¶ 12; Ex. B to Platt Decl., list of Class Members who submitted valid and timely Opt-Out requests received by ALCS.)

### 6. There were no timely objections to the Settlement.

The deadline for objecting to the Settlement was October 10, 2016. (Doc. 139 ¶ 8.) As of October 10, 2016, ALCS had received no objections. (Platt Decl. ¶ 13.) No objections had been filed with the Court or submitted to Class Counsel as of October 10. (*See* Caddell Decl. ¶ 32.) On October 14, 2016, one person named Bicentanul Long filed an objection. (Doc. 169.)

## IV. THE COURT SHOULD CERTIFY THE PRE-ADVERSE ACTION CLASS FOR SETTLEMENT PURPOSES.

In the Preliminary Approval Order, the Court conditionally certified the Pre-Adverse Action Settlement Class, holding that it met Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, as well as Rule 23(b)(3)'s predominance, superiority, and manageability requirements. (Doc. 139 ¶ 2.) For the same reasons articulated in the Parties' Joint Motion for Preliminary Approval, Doc. 125 at 16-18, which the Court found warranted preliminarily certifying the Pre-Adverse Action Settlement Class, the Court should finally certify the Class for settlement purposes here.

## V.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THE COURT CAN AND SHOULD FINALLY APPROVE IT.

### A. The standard for final approval of class action settlements within the Fourth Circuit is well-established.

There is a strong and long-standing judicial policy within this Circuit favoring resolution of litigation before trial. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("[t]he voluntary resolution of litigation through settlement is strongly favored by the courts") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources. As the court in *South Carolina National Bank* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

Rule of Civil Procedure 23(e) requires that the Court evaluate and approve any class action settlement. FED. R. CIV. P. 23(e). Rule 23(e) thus imposes two basic requirements on the parties and on the Court before the approval of a class settlement and dismissal. First, the Court must determine that notice was directed "in a reasonable manner to all class members." FED R. CIV. P. 23(e)(1). Second, the Court must determine that the settlement "is fair, reasonable, and adequate." FED R. CIV. P. 23(e)(2).

Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). Additionally, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S.C. Nat'l Bank*, 139 F.R.D. at 339).

**B. The notice provided to Pre-Adverse Action Class Members was reasonable and the best practicable under the circumstances.**

Due process requires reasonable notice to 23(b)(3) class members. *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005). The notice to Rule 23(b)(3) class members must inform class members (1) of the nature of the action; (ii) of the definition of the class certified; (iii) of the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) of the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). FED. R. CIV. P. 23(c)(2)(B).

Rule 23 does not require perfect notice but, rather, "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c). This requirement is satisfied with a mailing of the notice to each class member by first class mail. *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011).

As detailed above, ALCS took diligent measures to ensure the Notice Package was disseminated to as many of the Pre-Adverse Action Class Members as was reasonably possible. (*See supra,* § III(C); Platt Decl.) The class list compiled by Lowe's included 37,627 Pre-Adverse Action Class Members. (Platt Decl. ¶ 3.) In accordance with the Settlement Agreement, ALCS compared the Pre-Adverse Action Settlement Class list to the Disclosure Settlement Class list and determined that 21,281 individuals were a part of both the Disclosure Settlement Class and the Pre-Adverse Action Settlement Class. (*Id.* ¶ 4.) ALCS determined during the administration of the Disclosure Class Settlement that 1,640, of those 21,281 Class Members were not able to be located. (*Id.*) Those 1,640 Class Members who could not be located were removed from the

mailing population. (*Id.*)

ACLS was able to determine valid or deliverable addresses for 35,987 (constituting 95.6%) of the Class, and sent the Notice Package to each. (*Id.* ¶ 9.) Of those initially mailed, 7,354 were returned undeliverable. (*Id.* ¶ 7.) ALCS used a nationally recognized location service to locate and update addresses for those individuals, and as of October 10, 2016, had re-mailed 7,259 Notice Packages with the new addresses it had found. (*Id.*) Additionally, ALCS received 83 packages that had forwarding addresses, and re-mailed the Notice Packages to those addresses. (*Id.*) This left a total of 1,592 Notice Packages for which no forwarding or updated address could be found. (*Id.* ¶ 9.) In sum, as of October 10, 2016, the presumed Notice Package delivery rate was 91.4% of the entire Class. (*Id.* ¶ 9.)

What constitutes "reasonable efforts under the circumstances" under Rule 23(c)(2) is for the Court to determine after "examining the available information and possible identification methods." *Fisher v. Va. Elec. & Power Co.,* 217 F.R.D. 201, 227 (E.D. Va. 2003) (citations omitted). Reasonableness "is a function of [the] anticipated results, costs, and amount involved." *Id.* The Supreme Court has concluded that direct notice satisfies due process, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812–13 (1985), and other courts have approved mailed notice programs that reached a much smaller percentage of class members than the class notice reached in this case. *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion was estimated to have reached 80% of class members); *Martin v. United Auto Credit Corp.*, 3:05cv00143 (E.D. Va. Aug. 29, 2006) (Final Order approving class notice with approximately 85% delivery).

Here, the notice sent to class members by ALCS satisfied each of the requirements of Rule 23(e)(1) and Rule 23(c)(2)(B). The content of the Notice Package here, and the measures

and steps taken by ALCS to send out the Notice Package, are the same as for the Disclosure Class finally approved by the Court, adjusting for the differences between the two settlements. (*See* Doc. 137 ¶ 4, Order Granting Final Approval of Disclosure Class Settlement; Platt Decl., Ex. A; Doc. 128-1, Platt Declaration in support of Disclosure Class Settlement.)

The Parties' efforts to provide class members with notice of the Settlement, including the direct mail, website, and telephone hotline, makes it clear that such notice was the best available notice under the circumstances given the available information, the choice of possible identification methods, the number of class members, and the amount and substantive terms of the settlement. *See Fisher,* 217 F.R.D. at 227. The Parties, working in conjunction with ALCS, have complied with the provisions of the Court's Preliminary Approval Order, and have taken reasonable steps to ensure that the Class Members were notified of the settlement's terms and benefits.

### C.  The required CAFA notices have been sent.

Furthermore, Lowe's certified that it served notice of this settlement on the relevant federal authorities as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. (*See* Doc. 154.) Under CAFA, to provide additional assurance that relevant stakeholders and authorities learn of the settlement and have an opportunity to comment, the statute provides that the settling parties provide notice of a proposed settlement to interested federal and state governmental authorities. 28 U.S.C. § 1715.

Here, no governmental entity has made any objection to the proposed settlement. That fact can give this Court additional assurance that this is a reasonable settlement. *See, e.g.*, *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 590 (E.D. Mich. 2006) (granting final approval to proposed class action settlement and noting that "GM issued notice to the appropriate federal and

state attorneys general pursuant to [CAFA.] None submitted an objection."); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The Court notes that in several recent Title III of the ADA class actions in this district which were similarly noticed, the Department of Justice and several state attorneys general filed objections. This has not been the case in this matter. The fact that no objections have been filed strongly favors approval of the settlement.").

### D. Analysis of the *Jiffy Lube* factors show the Settlement is fair and reasonable, and should be finally approved.

The "fairness" analysis of a settlement ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). A settlement is entitled to a presumption of reasonableness where, as here, it is the result of arm's-length negotiations between competent counsel. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *S.C. Nat'l Bank*, 139 F.R.D. at 339; *see also United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (recognizing that where a court is satisfied that the decree was the product of good faith, arm's-length negotiations, a negotiated decree is presumptively valid and the objecting party "has a heavy burden of demonstrating that the decree is unreasonable.").

The Court's primary concern in the fairness analysis is confirming that the rights of absent class members received sufficient consideration in the settlement negotiations. *In re Jiffy Lube*, 927 F.2d at 158. The factors that the Court should consider in the fairness determination include "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation." *Id.* at 159; *In re The Mills*

*Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).

The Court should conduct its analysis in light of the "overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo*, 2009 WL 3094955, at *10 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). In addition, "[t]here is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Lomascolo*, 2009 WL 3094955, at *10.

Here, because the Settlement was reached after contentious, arm's-length negotiations and is an excellent result for the Pre-Adverse Action Class, the Court should confirm the fairness decision it reached on preliminary approval of the Settlement. (*See* Doc. 139.)

### 1. The parties reached the Settlement after more than two years of contested litigation with the aid of an experienced mediator.

The settlement is the culmination of more than two years of contested, adversarial litigation. (*See* Caddell Decl. ¶¶ 34–43.) Among other things, the docket reflects how Lowe's filed a motion to dismiss the Pre-Adverse Action Claim on July 11, 2013. (Doc. 31, Motion to Dismiss; Doc. 32, Memorandum in Support.) Plaintiffs responded on August 19, 2013. (Doc. 41.) The Court denied that motion on September 30, 2014. (Doc. 46.)

The Court granted leave for Plaintiffs to file a Second Amended Complaint on January 20, 2015. (Doc. 55.) Plaintiffs filed the Second Amended Complaint on January 22, 2015. (Doc. 56.) On February 20, 2015, the Court consolidated the *Brown* and *Ingram-Fleming* cases. (Doc. 64.) In the meantime, the Parties exchanged formal and informal discovery as to each other's claims and defenses. (*See* Caddell Decl. ¶¶ 34–41.) The matter went into discovery but remaining contested. On May 1, 2015, Lowe's filed another motion to dismiss the Pre-Adverse Action Claims. (Doc. 77, Motion to Dismiss; Doc. 78, Memorandum in Support.)

On May 27, 2015, with the second motion to dismiss not yet ruled upon by the Court, the parties mediated with renowned mediator Hunter R. Hughes in Atlanta. (Caddell Decl. ¶ 37.) The parties did not reach a settlement on that date, but continued exchanging information and negotiating toward a resolution. (*Id.*) After multiple telephone calls and email exchanges addressing key details, and with the continued assistance and oversight of Mr. Hughes throughout the process, the parties reached an agreement in principle to settle the Disclosure Claims on July 29, which was then memorialized into a Memorandum of Understanding. (*Id.*) The parties continued to negotiate, and ultimately reached an agreement in principle to settle the Pre-Adverse Action Claims. (*Id.*)

Given this background, the fact that negotiations were "adversarial" and were conducted at "arm's length" helps dispel any concern that counsel colluded in reaching agreement. *In re Microstrategy*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001). Moreover, supervision by a mediator "lends an air of fairness to agreements that are ultimately reached." *South Carolina Nat'l Bank v. Stone,* 139 F.R.D. 325, 330-31 (D.S.C. 1991).[8]

### 2. Plaintiffs' counsel possess decades of combined experience in class actions and other complex consumer litigation.

Among them, Plaintiffs' counsel have decades of experience in class action litigation, particularly in the consumer realm, and more particularly in the FCRA realm. (*See* Ex. 2, Caddell Decl.; Ex. 3, Declaration of Brandon J. Hill; Ex. 4, Declaration of John Hughes; Ex. 5, Declaration of Matthew A. Dooley; Ex. 6, Declaration of Brett Dressler, Ex. 7; Declaration of Ian Lyngklip; Ex. 8, Declaration of Leonard Bennett.) This fact weighs heavily in favor of the

---

[8] *See also, e.g., In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator[.]").

fairness of the Settlement. Moreover, the Court preliminarily appointed each of those attorneys' firms as Class Counsel for the Pre-Adverse Action Class, Doc. 139 ¶ 3, and finally approved them as Class Counsel for the Disclosure Class, Doc. 137 ¶ 12. Plaintiffs respectfully request that the Court finally appoint them as Class Counsel for the Pre-Adverse Action Class.

Given each of the foregoing, this Court can and should find that the Settlement was fair under the *Jiffy Lube* factors. 927 F.2d at 158-59.

### E. The Settlement is substantively adequate under *Jiffy Lube*.

The Fourth Circuit in *Jiffy Lube* instructs the Court to also determine whether the proposed class settlement is substantively "adequate." That analysis is guided by evaluating: (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *In re Jiffy Lube,* 927 F.2d at 159.

### 1. Lowe's vigorously defended against the Pre-Adverse Action Claims, as to both liability and damages.

As noted above, Lowe's moved to dismiss the Pre-Adverse Action Claims very early in the case, as asserted in the Original Complaint. (Doc. 31, 32). The Court denied that motion, Doc. 46, but Lowe's filed another motion to dismiss the Pre-Adverse Action Claims as asserted in the Second Amended Complaint, Doc. 77, 78. Lowe's contested both liability and damages, asserting, *inter alia,* (1) that the background reports provided fell within an express exclusion from the FCRA's definition of "consumer report," and (2) as a matter of law, Lowe's could not have willfully violated the FCRA to give rise to statutory damages. (*See* Doc. 78.) The parties went to mediation and ultimately reached a settlement agreement before the Court could rule on

Lowe's second motion to dismiss.

In light of the contested nature of the claim, the Plaintiffs, though believing that their claims were meritorious, were by no means certain to succeed on the merits. (Caddell Decl. ¶ 38.) Indeed, Plaintiffs were faced with the difficulties of (1) demonstrating a class-wide failure by Lowe's to comply with the provisions of 15 U.S.C. § 1681b(b)(3) with respect to the Pre-Adverse Action Class Members, (2) rebutting Defendant's potential defenses, (3) proving willful violations, (4) proving and substantiating actual damages, including statutory damages (ranging between $100 and $1,000 per Settlement Class Member) under 15 U.S.C. § 1681n for alleged willful violations, and (5) fully certifying Plaintiffs' claims for purposes of trial as a contested class. (*Id.*)

The Settlement provides each Pre-Adverse Action Class Member meaningful cash relief without having to take on the burden of proving any of those contested elements.

### 2. The additional expense and risk the parties would face at trial demonstrates the adequacy of the Settlement.

Due to, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of continued litigation, the Parties were willing to enter into the Settlement. (Caddell Decl. ¶¶ 36–44.) The risk, expense and uncertainty with respect to continued litigation supports the Settlement.

Although Pre-Adverse Action Class Members' damages could hypothetically exceed the payments they will receive, they would only recover all of those damages if: (1) Plaintiffs succeeded at certifying their claims as class actions, (2) the Pre-Adverse Action Class Members won on every theory—including willfulness—at trial, and (3) a jury decided their collective claims exceeded the Maximum Settlement Amount (*Id.* ¶ 39.) And none, much less all, of these conditions were foregone conclusions. (*Id.*) Further, defendant First Advantage is not a party to

the Settlement, and continues to vigorously contest the Plaintiffs' claims. (*See* Docs. 159, 160, Responses to Plaintiffs' motion to compel and motion to strike privilege log.)

In summary, by settling the Pre-Adverse Action Claims with Lowe's, Plaintiffs have now resolved all claims against Lowe's, and can avoid the risk, uncertainty, time, and expense of a potential trial with Lowe's.

### 3. The lack of opposition to the Settlement demonstrates its adequacy.

One district court in the Fourth Circuit has noted that "reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re Microstrategy,* 148 F. Supp. 2d at 668. When there is a small number of objections and opt-outs, this supports the conclusion that it was an adequate settlement. *See id.; see also In re The Mills Corp. Securities Litigation*, 265 F.R.D. 246, 257 (E.D. Va. 2009).

Here, as of October 10, 2016 (the deadline for objecting), no Class Members had objected to the Settlement. (Platt Decl. ¶ 13; Caddell Decl. ¶32.). One individual named Bicentanul Long filed a late objection on October 14, 2016. (*See* Doc. 169.) This failed to meet the Court's October 10 deadline, and should be overruled on that basis alone. (*See* Doc. 139 ¶ 8; Platt Decl. at Ex. A, Notice Package). In any case, Mr. Long also objected to the Disclosure Class. (*See* Doc. 121.) He raises essentially the same argument that he did previously: that a "small monetary payment will not suffice a lifetime of employment." (*See* Doc. 169; Doc. 121 ("a gift card cannot replace a career.")). This argument again lacks merit, and the Court should overrule Mr. Long's objection as it did with his objection to the Disclosure Class. (*See* Doc. 137 ¶ 8.)

Only 75 Class Members have opted out of the Settlement, constituting a mere 0.19% of the Class. (Platt Decl. ¶ 12.) This overwhelmingly positive reaction by Class Members support the adequacy of the settlement. *See The Mills Corp.,* 265 F.R.D. at 257 ("[A]n absence of

objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.") Considering all these factors, the Settlement is adequate under the *Jiffy Lube* standard.

## VI.    CONCLUSION/PRAYER

The Settlement achieved here is fair, adequate, and achieves real value for the Class in the face of risk and uncertainty. The Parties respectfully request that the Court enter Final Approval. A proposed final approval order, similar in form to the other previously submitted with the Parties' settlement agreement, is attached hereto as **Exhibit 9**.

Respectfully submitted this 17th day of October, 2016.

s/Michael A. Caddell
Michael A. Caddell
Cynthia B. Chapman
CADDELL & CHAPMAN
628 E. 9th Street
Houston TX 77007
Telephone: (713) 751-0400
Facsimile: (713) 751-0906
mac@caddellchapman.com
cbc@caddellchapman.com

Mona Lisa Wallace (NC Bar No. 9021)
John Hughes (NC Bar No. 22126)
WALLACE and GRAHAM, P.A.
525 North Main Street
Salisbury NC 28144
Telephone: (704) 633-5244
Facsimile: (704) 633-9434
MWallace@WallaceGraham.com
JHughes@WallaceGraham.com

Leonard Anthony Bennett
Consumer Litigation Associates
12515 Warwick Boulevard, Suite 100
Newport News VA 23606
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
lenbennett@clalegal.com

Luis A. Cabassa
Brandon J. Hill
Wenzel Fenton Cabassa, P.A.
1110 N. Florida Ave., Suite 300
Tampa FL 33602
Telephone: (813) 379-2565
Facsimile: (813) 229-8712
lcabassa@wfclaw.com
bhill@wfclaw.com

Matthew Anderson Dooley
Anthony Rocco Pecora
O'Toole McLaughlin Dooley & Pecora Co. LPA
5455 Detroit Road
Sheffield Village OH 44054
Telephone: (440) 930-4001
Facsimile: (440) 934-7208
mdooley@omdplaw.com
apecora@omdplaw.com

Brett E. Dressler
Sellers, Hinshaw, Ayers, Dortch & Lyons, PA
301 S. McDowell, Suite 410
Charlotte NC 28277
Telephone: (704) 377-5050
Facsimile: (704) 339-0172
bdressler@sellersayers.com

Ian B Lyngklip
Lyngklip & Associates Consumer Law Center, PLC
24500 Northwestern Highway, Ste. 206
Southfield MI 48075
Telephone: (248) 208-8864
Facsimile: (248) 208-9073
Ian@MichiganConsumerLaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: All counsel of record in this case, including:

Robert Walker Fuller, III
Pearlynn Gilleece Houck
Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900
Charlotte NC 28246
Telephone: (704) 377-8396
Facsimile: (704) 373-3996
rfuller@rbh.com
phouck@rbh.com

Robert T. Quackenboss
Kevin James White
Hunton & Williams, LLP
2200 Pennsylvania Avenue, NW
Washington DC 20037
Telephone: (202) 955-1950
Facsimile: (202) 778-7471
rquackenboss@hunton.com
kwhite@hunton.com

Jeffrey S. Jacobovitz
Arnall Golden Gregory, LLP
1775 Pennsylvania Avenue, NW, Suite 1000
Washington DC 20006
Telephone: (202) 677-4056
Facsimile: (202) 677-4057
jeffrey.jacobovitz@agg.com

Brent Alan Rosser
Hunton & Williams
101 South Tryon Street, Suite 3500
Charlotte NC 28280
Telephone: (704) 378-4707
Facsimile: (704) 331-5146
brosser@hunton.com

C. Knox Withers
Arnall Golden Gregory, LLP
171 17th Street NW, Suite 2100
Atlanta GA 30363
Telephone: (404) 873-8646
Facsimile: (404) 873-8647
henry.chalmers@agg.com
knox.withers@agg.com


s/Michael A. Caddell
Michael A. Caddell

Exhibits:

1. Declaration of Steve Platt
2. Declaration of Michael A. Caddell
3. Declaration of Brandon J. Hill
4. Declaration of John Hughes
5. Declaration of Matthew A. Dooley
6. Declaration of Brett Dressler
7. Declaration of Ian Lyngklip
8. Declaration of Leonard Bennett
9. Proposed Order